STATE OF MISSOURI at the relation of S. S. KRESGE COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, FRANCIS H. TRIMBLE and EWING C. BLAND, Judges of the Kansas City Court of Appeals.— 101 S. W. (2d) 14.

Division Two, December 23, 1936.*

*NOTE: Opinion filed at May Term, 1936, August 20, 1936; motion for rehearing filed; motion overruled at September Term, December 23, 1936.

146

*Wayne Ely, John H. Lathrop, John N. Monteith* and *James F. Walsh* for relator; *Leahy, Walther, Hecker & Ely* of counsel.

148

*Trusty & Pugh, Roy W. Rucker* and *Guy W. Green, Jr.,* for respondents.

WESTHUES, C.—Relator seeks, by this proceeding, to quash the record and opinion of the Kansas City Court of Appeals in the case of David Garnett v. S. S. Kresge Company, reported in 85 S. W. (2d) 157, on the theory that the opinion is in conflict with controlling decisions of this court.

The opinion deals with a number of questions, only three of which were assailed by relator. The first two pertain to the question of the admissibility of written statements made by employees of the Kresge Company, and the third deals with the argument made to the jury by counsel for Garnett. The statement of the facts of the case, as made by the Court of Appeals, and a part of the opinion disposing of the admissibility of the written statements of the employees read as follows:

"This is a suit for damages for personal injuries. There was a verdict and judgment in favor of plaintiff in the sum of $10,000.00. Of the judgment, plaintiff remitted $2,500.00, resulting in a final judgment in his favor for $7,500.00. Defendant has appealed.

"The facts show that plaintiff was injured on September 26, 1932, by stepping and falling on some grease upon the floor of the kitchen in defendant's 'Dollar' store in Kansas City. Plaintiff was employed by defendant as a cook and he and Ruth M. Dresser, another employee of the defendant, had charge of the kitchen and soda fountain in said store. When plaintiff was out she was in charge. Lonnie Wilkins was one of the colored porters in the kitchen who reported to the plaintiff. It was the duty of Wilkins to keep the kitchen, including the floor thereof, clean.

"The suit was originally filed against Louis B. Kittinger, the manager of the store. Later an amended petition was filed making Ruth M. Dresser and the present defendant, S. S. Kresge Company, parties defendant. At the close of plaintiff's evidence the court sustained a demurrer to the evidence as to Kittinger and Miss Dresser and the cause proceeded against the Kresge Company.

"Plaintiff testified that he was out of the kitchen for two hours and upon his return he slipped and fell; that he did not see the grease until after he fell but he then noticed it on his trousers and felt

it on his hands; that 'it was all over my trousers; the whole side of my trouser's leg was saturated with grease.' No witness saw the plaintiff fall and none testified as to the fall or as to the facts or circumstances surrounding the occurrence. No witness testified as to how the grease got on the floor or how long it was there before the fall. However, plaintiff introduced in evidence, over the objection of the defendant, parts of written statements of Miss Dresser and Wilkins which were procured about three months after the casualty. The part of the statement of Miss Dresser which was introduced in evidence reads as follows:

" 'My name is Ruth Dresser. I live at 1634 Belleview St., Kansas City, Mo. I am now the manager of Kresge's store at 12th & Main, the Dollar Store. At the time of the accident, which occurred on September 23, 1932, I was assistant manager of the same establishment. The accident occurred in the kitchen of the store. The floor in the kitchen is of the salt and pepper terrazzo type. The accident happened between 4:30 and 5:30 p. m. Grease had been spilt on the floor and partially wiped up. It was still slippery at the time Garnett slipped and fell on it. The grease had been spilled on the floor at least two or three hours before Mr. Garnett fell on it. (Signed) Ruth M. Dresser.'

"That part of the statement of Lonnie Wilkins that was introduced in evidence reads as follows:

" 'My name is Lonnie Wilkins. I live at 1943 North 4th Street, Kansas City, Kansas. I work at Kresge's Dollar Store in Kansas City, Missouri, at 12th & Main Streets. I have worked there since 1928 as the porter in the fountain department. My duties include sweeping up the floor in the kitchen and keeping it clean. These were my duties on September 26, 1932, on which date Garnett slipped and was injured. The kitchen floor is smooth like marble. I spilled the grease on the floor shortly after the lunch hour. I intended to clean the grease up, but I did not get to do it right away. I had not gotten to it by the time Mr. Garnett fell on it. (Signed) Lonnie Wilkins.'

"Neither Miss Dresser or Wilkins was used as a witness by either party at the trial.

"It is insisted that the court erred in admitting the statements in evidence. It is conceded that these statements cannot be considered, in any sense, a part of the *res gestae* and defendant says that they were nothing more than subsequent narratives of how the accident occurred and that they were not made in pursuance of any business of the defendant and were not in any way related to or connected with any act of authority of Miss Dresser or Wilkins.

"The general rule is that an admission or declaration of an agent or employee binds the principal only when made during the continuance of the relation and in regard to the transaction then de-

pending. [Redmon v. Metropolitan St. Ry. Co., 185 Mo. 1, 12, 84 S. W. 26, 105 Am. St. Rep. 558; Gaines v. Berkshire Life Ins. Co. (Mo. App.), 68 S. W. (2d) 905, 908.] However, 'the existence or absence of knowledge may be shown by declarations of the person whose knowledge is of importance, even though such declarations were made a considerable time before or after the time involved in the inquiry, provided there is not such an element of remoteness (that is as to his knowledge) as destroys materiality.' [22 C. J., p. 284.] The words in parenthesis are ours. '*Post rem* statements of agents may be introduced in evidence against the principal for the purpose of showing or tending to show knowledge.' [1 R. C. L., p. 510. See, also, Fisher v. Pullman Co., 212 Mo. App. 280, 254 S. W. 114, 115; Wainwright v. Westborough Country Club (Mo. App.), 45 S. W. (2d) 86, 91; Pulsifer v. City of Albany, 226 Mo. App. 529, 47 S. W. (2d) 233, 238, 239; Yarbrough v. Wis. Lbr. Co. (Mo. App.), 211 S. W. 713, 714.]

"The case last cited was a suit by an employee against his master for damages for an injury caused by a defective machine. Plaintiff testified that 'defendant's foreman told him just after the accident that he knew that this ring which broke was worn and that he was intending to put in a new one, but had delayed doing so.' The court said that this evidence was 'competent to show defendant's knowledge of the defect a sufficient length of time before the accident to have repaired the same.' The court also said that this evidence was not competent to show defendant's negligence, that is, that the machine was defective for the statement was hearsay as to that matter but that 'when evidence is competent for one purpose, however, it must be admitted, and its purpose and effect limited at the time, or by the instructions, or both, to the purpose for which it is competent.' . . .

"(4) Of course, the statement of Miss Dresser was admissible for still another reason. She was a party to this suit when her statement was introduced and it was admissible against her as an admission against her interest. Therefore, it could not have been excluded by the court even had it been incompetent evidence as against the present defendant. [Lanham v. Vesper, etc., Co. (Mo. App.), 21 S. W. (2d) 890, 893.]"

■ Since Ruth Dresser was a party defendant at the time her statement was admitted in evidence, the Court of Appeals correctly ruled that the objection to its introduction was properly overruled by the trial court. The Court of Appeals quoted from Yarbrough v. Wis. Lumber Co. (Mo. App.), 211 S. W. 713, l. c. 715, the following:

"When evidence is competent for one purpose, however, it must be admitted, and its purpose and effect limited at the time, or by the instructions, or both, to the purpose for which it is competent."

Respondents' opinion does not disclose that the defendant, Kresge

Company, requested the court to limit the effect of the written statement. Under the circumstances, that would have been the only remedy open to the defendant corporation. That was not asked.

The Court of Appeals, in that part of the opinion above quoted, also held that the entire statements of Ruth Dresser and Wilkins were admissible against the defendant corporation, as proving knowledge on its part of the existence of the grease upon the floor. In so holding we are of the opinion that respondents' ruling is in conflict with numerous decisions of this court. A number of which are: Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S. W. (2d) 947; Redmon v. Metropolitan St. Ry. Co., 185 Mo. 1, 84 S. W. 26; State ex rel. v. Daues, 323 Mo. 388, 19 S. W. (2d) 700, l. c. 706 (6, 7); Wallingford v. Term. Railroad Assn., 337 Mo. 1147, 88 S. W. (2d) 361, l. c. 365 (2-4). Only that part of the statement of Ruth Dresser which read: "The grease had been spilled on the floor at least two or three hours before Mr. Garnett fell on it," and that part of the statement of Wilkins which read: "I spilled the grease on the floor shortly after the lunch hour," were admissible against the corporation as tending to prove knowledge of the condition of the floor. This is sustained by the ruling of the court en banc in the case of O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S. W. 55, l. c. 61 (3). The balance of the statement, however, was evidence tending to prove negligence and not notice. Note the following statements of Wilkins: "My duties include sweeping up the floor in the kitchen and keeping it clean." Also, "I intended to clean the grease up, but I did not get to do it right away." These statements had nothing to do with notice to the corporation. Had Wilkins been a witness in the case and had he testified to these facts it would have been proper evidence against the corporation, but the written statement was incompetent under the hearsay rule. The opinion of the Court of Appeals discloses that the statements were not made in the course of Wilkins duties, but were made long after the time of the accident and, therefore, were not a part of the *res gestae*. The rule followed by this court and the Court of Appeals is well stated in 22 Corpus Juris, 367, section 440:

"An admission of an agent may be received in evidence against his principal, where the agent, in making the admission, was acting within the scope of his authority, and the transaction or negotiation to which the admission relates was pending at the time when it was made. Conversely, a declaration of an agent, not within the scope of his authority nor in the course of the negotiation to which it refers, is not admissible against the principal."

The case of Redmon v. Metropolitan St. Ry. Co., supra, referred to in the opinion of the Court of Appeals, and numerous other cases from this court and the Courts of Appeals of this State are cited in Corpus Juris, supporting the text. In the Shelton case, supra, Division One of this court said:

"But we do not understand that a 'manager' (the scope of the duties or authority of the manager does not appear herein) should be deemed to so represent the principal for all purposes that any statement or declaration at any time made by him in reference to the company's rights, interests, or affairs, at that point, would be admissible in evidence against the principal. As we view the matter, he comes within the general rule above stated and only declarations or statements made by him in the course of, relating to, and connected with the ordinary business of the principal, within the scope of his authority, and then depending, are excepted from the hearsay rule and competent as admissions against his principal. A mere narration of certain alleged circumstances or conditions of a past event made long after the happening thereof, as in this instance, does not come within the exception to the hearsay rule."

The ruling of the Court of Appeals, therefore, that the whole of the statements of Ruth Dresser and Wilkins was admissible against the corporation as tending to prove notice, is in conflict with the decisions of this court above mentioned.

■ The Court of Appeals correctly ruled that the theory upon which Garnett could recover was negligence on the part of the corporation in failing to clean the floor after the grease had been spilled. Whether the grease had been carelessly spilled was immaterial in so far as Garnett was concerned. Appellant complains of this ruling. But even if the plaintiff in his petition alleged negligent spilling of the grease and by the instructions required the jury to so find, it was surplusage and an additional burden on the plaintiff.

■ Relator also asserts that the Court of Appeals opinion is in conflict with decisions of this court in disposing of the question pertaining to the argument to the jury by counsel for Garnett. Respondents' opinion discloses that Garnett's injuries resulted in blood poisoning. The defendant corporation furnished the necessary medical aid and paid the hospital bills for Garnett. Blood transfusions were given Garnett and a number of doctors called in consultation. Counsel for Garnett in making his argument to the jury stated:

" 'Why, their very conduct in sending this man to the hospital, in furnishing doctors—not one—not two—but a half dozen for him. The expense of it must have been somewhere in the thousands of dollars. That conduct showed upon their part a guilty knowledge. Do you think Kresge would have ever spent that money in the world unless Kresge had known that it was liable to this man for the condition which followed this injury? Who ever heard of Kresge going out and taking a man to the hospital and hiring a half dozen of the outstanding physicians and surgeons and diagnosticians of this city, unless they had to do it.' "

The Court of Appeals disposed of this question as follows:

''The only specific objection at the trial to this part of the argument was that it was a tirade against the defendant for 'not doing right by anyone who worked for them who was injured unless they have to do it, as absolutely outside of the evidence.' We are not prepared to say that, although the amount paid by defendant for doctors' and hospital bills, is not in evidence; that the trial court abused its discretion in this matter by doing no more than saying: 'Just argue the evidence, Mr. Rucker, and the reasonable deductions therefrom' and 'It is just a matter of argument, gentlemen of the jury, and you will be guided by. the evidence.' [Goyette v. St. L.-S. F. Ry. Co. (Mo.), 37 S. W. (2d) 552.]''

Another part of the argument complained of was:

'' 'If you should award this man a verdict for the sum total of the treasury balance of the Kresge Company, it would not compensate him for the experience through which he went, but you cannot do that.' ''

The Court of Appeals said as to this:

''In connection with this part of the *agreement* the court said: 'Kresge's treasury balance has nothing to do with this case, and the jury will not pay any attention to it.' No mention was made by counsel of the size of defendant's balance. Defendant referred to the court's failure to rebuke counsel for the defendant. We cannot say that this incident is sufficient to justify a reversal of the judgment.

Other parts of the argument made were objected to and the ruling thereon, by the trial court, reviewed by the Court of Appeals. In our opinion the two referred to herein are the most serious. It may be true that the defendant, Kresge Company, was one of those so called heartless, bloodless and unsympathetic corporations, but it does sometimes happen that such corporations are controlled by men of fine character, possessed of a sympathetic and humane disposition. A corporation that furnishes the necessary medical attention to its employees, who are injured in the course of their employment, should certainly not be penalized for so doing. Garnett in all probability was financially unable to obtain the medical attention necessary to save his life. The company voluntarily furnished, as counsel for Garnett stated, a half dozen doctors at an expense of thousands of dollars. At the trial this humane act was then turned against the corporation, by counsel for respondent, as an admission of negligence and liability. To us such an argument seems unfair, highly prejudicial, and made for the sole purpose of inflaming the jury against the defendant corporation. Add to that the remark, that plaintiff could not be compensated for his injuries if he were paid the total of the treasury balance of the defendant corporation, and other statements made by counsel for Garnett, which were out of the record, and we have a situation that we deem incurable, except by granting a new trial. Let us place the shoe on the other foot and see if it

pinches. Suppose counsel, who made the argument, had the misfortune of running over a child while driving his car. The child brought suit alleging negligence. At the trial the argument would be made that counsel knew he was guilty of negligence because he had taken the child to a hospital and requested that it be given medical attention. Would counsel feel that that would be proper argument?

The trial court, as respondents' opinion discloses, in response to the objections made by counsel for defendant corporation, merely stated in substance that it was a matter of argument. Counsel for Garnett seems to have spent much of his time arguing matters outside of the issues in the case. In another part of the argument, which was objected to, counsel stated in substance that the situation was so desperate that the general counsel of the defendant corporation from another city, who had the reputation of being able to hypnotize juries, was there to take over the defense of the case, etc. While this argument in itself may not have been prejudicial it dovetailed in with the whole theme of counsel's argument and tended to lead the jury to believe that the defendant was a gigantic corporation, with a treasury full of funds, capable of hiring the best doctors and lawyers. Such an argument can be made for only one purpose, that is to get the jury in a frame of mind that a few thousand dollars more or less to the unfortunate plaintiff could not hurt the corporation.

In the case of Beer v. Martel, 332 Mo. 53, l. c. 59, 55 S. W. (2d) 482, l. c. 484 (6), this court said:

"Counsel may properly comment on any fact in the record so long as such comment has a legitimate bearing on any issue in the case; but counsel may not make an unfair, misleading, and prejudicial argument on immaterial facts which happen to get into the record without objection, and justify the argument on the ground that the facts about which he argued were in the record."

That case was a suit by an administrator, suing for the benefit of the estate, to recover damages for the alleged wrongful death of the deceased. The argument condemned was, that the heirs who would benefit by a judgment for plaintiff were wealthy and should not ask damages for the pain and suffering of the deceased. A trial court granted a new trial because of the argument made and this action was sustained by this court. In Norris v. St. Louis, I. M. & S. Ry. Co., 239 Mo. 695, l. c. 721, 144 S. W. 783, l. c. 790 (14), this court said:

"The trial court should not permit argument which amounts to an appeal to the jury to give judgment for one party on account of his poverty or the wealth of the opposite party, and trial courts should promptly rebuke counsel who indulge in such arguments. The most effective way of shutting out improper argument is for the trial court to inform the attorney that a verdict obtained by improper remarks will promptly be set aside by the trial court."

In Atkinson v. United Rys. Co., 286 Mo. 634, l. c. 643, 228 S. W. 483, a suit for damages for personal injuries, the trial court had appointed a doctor to make an examination of plaintiff's injuries. The doctor was not called by either party. Plaintiff's attorney commented on the fact that the defendant had not called the doctor as a witness. In passing upon this argument this court said:

"The argument directed attention to the omission to call Dr. Bliss, as the one man who knew best about plaintiff's neurotic condition, whose acquaintance was well known to the defendant, indicating that he was defendant's own witness, and asked the jury to draw from the incident an inference most favorable to plaintiff's story. It was prejudicial, and the court erred in permitting it, so that a reversal is necessary."

If that argument justified a reversal of the judgment then how can we consistently hold that the argument made in this case does not justify a reversal? And note the case of Stubenhaver v. Kansas City Ry. Co., 213 S. W. 144, where the Kansas City Court of Appeals reversed a judgment where plaintiff's counsel argued to the jury that a defendant had the right to have the court order the plaintiff to submit to an examination by a disinterested doctor. It is true, and we have not overlooked the well-settled law, that a trial court has a wide discretion in granting or refusing to grant new trials because of improper argument of counsel. [Jones v. Kansas City, 76 S. W. (2d) 340.] In this case, however, we have not one transgression but many of them. The Court of Appeals, by its opinion, held that the argument was improper and held that the trial court did not abuse its discretion in refusing to grant a new trial. If we were to take each transgression separately, and if such were the only one in the case and the trial court had reprimanded counsel, the ruling of the Court of Appeals might not be in conflict with opinions of this court. But counsel persisted in making inflammatory remarks and arguing matters outside of the record. He was not rebuked by the trial court, as was requested. We are of the opinion that the trial court abused its discretion in not granting a new trial. We are further of the opinion that respondents' opinion is in conflict with the following cases by this court: Nelson v. Heine Boiler Co., 323 Mo. 826, 20 S. W. (2d) 906, l. c. 910 (9, 10); Henry v. Ill. Cent. Railroad Co., 282 S. W. 423, l. c. 425 (7); Atkinson v. United Rys. Co., supra.

The opinion and record of the Court of Appeals is, therefore, quashed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Westhues, C., is adopted as the opinion of the court. All the judges concur.

## On the Motion for Rehearing.

PER CURIAM:—Relator and respondents each filed a motion for

rehearing. Respondents argue that the whole of the statements made by Wilkins and Dresser was admissible, while relator contends that the whole of the statements should have been excluded on the ground of hearsay. Relator's contention has caused us to give the question considerable thought. The cases of Rice v. St. Louis, 65 S. W. 1002, 165 Mo. 636, and McDermott v. Hannibal & St. Joseph Ry. Co., 73 Mo. 516, seem, to some extent at least, to sustain relator's contention. Relator also argues that the case of O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S. W. 55, l. c. 61 (3), by the court en banc, and cited in our principal opinion, is not in point. We have re-examined the case, and what was said may have been stated with more clarity, yet we are of the opinion that the case is in point. Perhaps we too ought to have been more specific in what we said on the question in our opinion, hence these comments on the motions for rehearing. In the case of Olson v. Seldovia Salmon Co., 88 Wash. 225, 152 Pac. 1033, l. c. 1036 (5), the Supreme Court of the State of Washington clearly applied the principle of law under discussion. The court there said:

"Counsel for appellant contend that the trial court erred in admitting, over their objection, certain testimony showing actual knowledge on the part of appellant's superintendent of the existence of the projecting shaft and the key thereon. With a view of so showing, and with the statement on the part of respondent's counsel that it was 'simply to show knowledge,' a witness for respondent was asked and answered as follows:

"'Q. Were you ever at this particular place where this set screw was and this elbow of the key? A. Yes, I remember one occasion where three of us were together there. . . . Q. Now that was before Louie was hurt? A. Yes, sir. Q. How long before? A. It must have been about three weeks. Q. Now what did you, at that time, hear Mr. Southworth say to Mr. Whorf, the general manager? What did he say with reference to the set screw? A. He passed the remark that it is rather dangerous to have it uncovered. Q. To have what? A. To have that one running uncovered—without any covering on it. Q. And called his attention to these particular two things which you mention here? A. To the key and the set screw.'

"It is now argued that the admission of this evidence over the objection of counsel for appellant was hearsay, and was erroneous and prejudicial as such. In view of the fact that it was introduced, not for the purpose of showing that the projecting shaft and key were as claimed by respondent and were dangerous, but for the purpose of showing that appellant's superintendent had knowledge of the condition of the shaft and key, we think the evidence was not hearsay. . . .

"If counsel for appellant desired to have this testimony confined more definitely to the question of the superintendent's knowledge

of the condition there existing, and avoid having the possible effect of it being hearsay evidence upon the question of the existence of such condition, they had opportunity to request the court to instruct the jury accordingly. There is nothing in this record to indicate that any such request was made, nor even that the court did not so instruct the jury, the instructions of the court to the jury not being before us in this record. We conclude that no prejudicial error is shown in the admission of this evidence.''

The result of the ruling in the Scullin Steel Company case is the same. So in this case, statements made by persons in charge of the kitchen, tending to show knowledge of the condition of the floor, were admissible only for the purpose of showing knowledge and not as proof of the condition itself. Respondents argue that at the trial relator did not seek to have the evidence limited to that purpose, but only made a general objection that the statements were hearsay; therefore, the trial court properly overruled the objections since a part of the statement of Lonnie Wilkins was admissible, and all of the statement of Miss Dresser, because she was at that time a defendant. That question is not before us because this is a certiorari proceeding and we are limited to dealing with a conflict. We said in the main opinion that the opinion of the Kansas City Court of Appeals, in justifying the admission of the whole of the statements on the ground that the statements tended to prove knowledge on the part of the persons to whom knowledge was important, was in conflict with controlling decisions of this court, a number of which were cited and quoted from in the main opinion. We also held, under the authority of the Scullin Steel Company case, that isolated portions of the statements were admissible to show knowledge, and therefore no conflict existed as to that. The McDermott case, cited by relator, was before this court on a second appeal. [See 87 Mo. 285.] On that occasion this court changed its position, and the holding in that case is in harmony with our decision here and the Olson case, supra, as well as the Scullin Steel Company case. Note what this court said at page 300 of 87 Mo.

''If one were offered to testify that he heard another inform the superintendent of facts, showing the incompetency of an employee, it would be admissible as showing that the superintendent had knowledge of those facts, if the facts themselves were otherwise proved, but it would certainly be inadmissible to prove those facts. It would be but hearsay evidence as to the existence of the facts. It is upon the same principle that the admission of an agent of his knowledge of facts is competent to prove his knowledge of the facts, if the existence of such facts is otherwise proved; but it is incompetent to prove the existence of the facts.''

That opinion was cited with approval, by this court, in the case of Bond v. St. Louis-San Francisco Railroad Co., 315 Mo. 987, 288 S. W. 777, l. c. 783, 784 (13). This court there said:

"There was evidence in the case tending to show that some of the piling were more or less rotten and the strength of the bridge diminished to that extent. If defendant had knowledge of that condition in time to have made renewals before the wreck occurred, that was a material fact. Its foreman's knowledge in that respect was its knowledge. Evidence tending to show such knowledge on the part of the foreman was therefore competent, whether offered directly for that purpose or for the purpose of impeachment. [Phillips v. Railroad, 211 Mo. 419, 441, 111 S. W. 109, 17 L. R. A. (N. S.) 1167, 124 Am. St. Rep. 786, 14 Ann. Cas. 742; McDermott v. Railway, 87 Mo. 285, 299.]"

The case of Rice v. City of St. Louis, supra, cited by relator, while apparently supporting relator's theory, is not in point because the court held in that case that the defendant, whose agent had made the statement tending to show knowledge of the defect, had no authority to remedy the situation and was not responsible for the condition. We have taken the trouble to investigate this question and find that authorities from outside of the state sustain our position. In the notes on page 315 of 131 American State Reports, we find the following:

"But there frequently occur cases in which acts and statements *post rem* are evidence of facts entirely disconnected from the question of agency in the particular matter. The decisions upon this class of evidence are not uniform, but it has been held in a number of cases that under certain conditions, such statements of agents and officers may be introduced in evidence against the principal, not for the purpose of showing negligence, but only for the purpose of showing, or tending to show, knowledge and such acts and statements being admitted, their effect should be controlled by an instruction."

There is, of course, a conflict of authority upon this question. For a discussion of this see Hopkins v. Boyd (Ind.), 47 N. E. 480. Our Courts of Appeals have followed the rule announced by the Supreme Court of the State of Washington in the Olson case, supra. [See Fisher v. Pullman Co., 254 S. W. 114, 1. c. 115 (2).] In view of the decisions in the case of McDermott v. Hannibal & St. Joseph Ry. Co., 87 Mo. 285, the Scullin Steel Company case and the Bond case, supra, we are compelled to hold that the rule of law announced by the opinion of the Court of Appeals, holding that *"post rem* statements of agents may be introduced in evidence against the principal for the purpose of showing or tending to show knowledge" is not in conflict with opinions of this court. The conflict exists only insofar as the opinion of the Court of Appeals justified the admission of evidence under this rule, which was proof of the negligence. This we pointed out clearly in the main opinion.

Attorneys for relator seem to be much alarmed. They state that such a rule would open the way to fraud. We see no such danger,

especially if we follow the ruling in the McDermott case, 87 Mo. 285, supra, and the Olson case, supra, and limit the testimony to prove knowledge, and not as proof of the condition itself.

The motions for rehearing are overruled.