**MISSOURI STATE HIGHWAY COMMIS-SION, Plaintiff-Appellant,**

v.

**HOWARD CONSTRUCTION CO. et al.,
Defendants-Respondents.**

No. WD 30754.

Missouri Court of Appeals,
Western District.

Feb. 2, 1981.

J. Michael Cronan, Jackson & Sherman, P. C., Kansas City, for plaintiff-appellant.

Gordon N. Myerson, Morris, Larson, King, Stamper & Bold, Kansas City, for defendant-respondent Howard Const. Co.

Edward W. Mullen, Deacy & Deacy, Kansas City, for respondent Happle.

Before WASSERSTROM, C. J., Presiding, and SHANGLER and MANFORD, JJ.

WASSERSTROM, Chief Judge.

Daniel Taylor was killed when he was struck by a truck driven by defendant Kenneth Happle as an employee of defendant Howard Construction Company. The Missouri State Highway Commission paid survivor benefits to Taylor's widow under the Workmen's Compensation Act and then sued defendants on behalf of itself and the widow for Taylor's death. Upon trial, the jury found for both defendants. The Commission appeals. We affirm.

On October 21, 1974, a new highway slab was nearing completion, but no shoulders had yet been constructed. Taylor and a fellow worker were traveling east by truck on the south side of the slab making compaction tests for the purpose of ascertaining

whether conditions were proper for the building of the shoulders. This required Taylor at intervals to travel by foot from the south side of the slab to the north side.

At that same time, Happle, together with a fellow employee, was traveling west in a Howard truck on the north side of the slab. Happle made a stop one-quarter of a mile east of the point of the accident, at which time he saw Taylor standing by his truck on the south side of the slab. Happle then resumed traveling in the westerly direction at a speed variously estimated from 15 to 40 miles per hour. As he moved forward, he saw Taylor start across the concrete slab moving at a saunter and preoccupied with materials which he held in his hands. Happle started honking and when his truck was approximately 100 feet away and when Taylor was approximately halfway across the slab, Taylor broke into a jog or trot. At about the same time, or very shortly thereafter, Happle slammed on his brakes and swerved sharply to the north. The truck went off the north edge of the slab but the mirror on the left front door of the truck struck Taylor, causing him to fall against the truck, thereby causing the fatal injuries. The truck left 27 feet of skid marks. The Commission submitted on humanitarian negligence.

On this appeal the Commission alleges the following errors: (1) that the trial court erred in giving Instruction No. 8, a withdrawal instruction; and (2) that the trial court erred in refusing to allow the Commission to make a certain jury argument.

### I.

█ A preliminary issue needs to be mentioned. Both defendants contend that the trial errors alleged by the Commission should not be considered, because it failed to prove a submissible case of humanitarian negligence. A careful examination of the evidence has produced the conclusion that the Commission did make a submissible case. Recounting a full analysis leading to that conclusion would have no precedential value and would serve no purpose even for this case, in view of the fact that for the

reasons stated below this opinion rejects the claims of trial error.

### II.

Prior to the trial, defendants took Happle's deposition, in which he made a number of statements concerning speeds and distances. At trial, as part of its case the Commission offered some of those deposition statements as admissions against interest. At that point counsel for defendant Howard objected, and the following colloquy occurred:

"MR. MYERSON: On behalf of the defendant Howard, I would object to its being used, read, as against defendant Howard. There has been no showing that this defendant Happel [sic] had any authority to make any statements or admissions binding on the corporate defendant Howard. I would ask for an appropriate instruction to the jury.

THE COURT: I will sustain that objection. It will be taken only as to defendant Happel [sic], if there is anything to be taken against him. Not against the defendant Howard.

MR. MYERSON: You are instructing the jury at this time they should not consider this as against the defendant Howard.

(The following was a conference outside the hearing of the jury.)

THE COURT: The Howard liability depends on the liability of Happel [sic] anyway. The jury will be instructed on that one, when we get to that point.

MR. MYERSON: But as to these statements, your Honor, none of these are admissions as against my client, Howard.

THE COURT: That's a true statement.

MR. BUCKLEY [counsel for the Commission]: That would be a true statement.

MR. MYERSON: They would not be as to defendant Howard. I would have to object and ask the Court to instruct the jury that these statements at this time may not be used against my client, Howard Construction Company.

MR. CRONAN [counsel for the Commission]: Recently a case came down where the Court was asked to take judicial notice, I believe, of a statute and read it from the bench apparently, in the middle of the case. It was reversed on the appeal. It was said that was in the nature of an instruction and instructions come at the end of the case. It would improper to instruct now.

MR. MULLEN: That is closing the door after the horse has been stolen.

THE COURT: I don't think I am in a position to give an instruction at this point. I sustained on this basis, but I don't think I can give an instruction to the jury at this point."

At the conclusion of all of the evidence, defendant Howard offered Instruction No. 8 which was given by the court as follows: "The evidence of defendant Happle's statements in his deposition are not to be considered by you with respect to defendant Howard Construction Company." The Commission contends that Instruction No. 8 was error, for reasons which they argue under three subheadings.

### A.

The Commission for its first subpoint contends that the instruction is a misstatement of law. It argues that there is no question of Happle's agency on behalf of Howard, that under the doctrine of respondeat superior Howard is absolutely bound by negligence of its employee Happle, and since the deposition statements go to show Happle's negligence, that evidence should be and is admissible equally against Howard as well as against Happle.

■ This argument flies in the teeth of the established rule in Missouri that a narrative statement by an employee of past events is not admissible against the employer unless the admissions are made within the scope of the employee's employment; and to be within the scope of his duties, the employee usually must have some executive

capacity. This doctrine was established in Missouri long ago in *Rogers v. McCune*, 19 Mo. 557 (1854), and has been followed constantly ever since. The leading case on the subject, and one much cited, is *Roush v. Alkire Truck Lines*, 299 S.W.2d 518 (Mo. 1957).

■ The Commission seeks to escape this long line of cases by attempting to draw a distinction between the situation, as here, where the liability of the employer must rest exclusively on the negligence of the employee making the admission, as against the different situation where the employee making the statement addresses some negligence committed by the employer in some other fashion or through someone else. It is true that this distinction from the present case does exist in many of the Missouri cases on this subject. However, this factual distinction cannot be made with respect to at least the following cases: *Chawkley v. Wabash Ry. Co.*, 317 Mo. 782, 297 S.W. 20 (banc 1927); *State ex rel. S. S. Kresge Co. v. Shain*, 340 Mo. 145, 101 S.W.2d 14 (1936); and *Davis v. Sedalia Yellow Cab Company*, 280 S.W.2d 869 (Mo.App.1955).[1] Thus the distinction sought to be drawn by the Commission finds no support in the Missouri cases.

To justify its attempted distinction, the Commission cites and relies upon a number of cases from other jurisdictions, especially *Madron v. Thomson*, 245 Or. 513, 419 P.2d 611 (1966). It also cited Rule 508(c) of the Model Rules of Evidence of the American Law Institute and the successor Rule 801(d)(2)(iv) of the Uniform Rules of Evidence. The Commission places particular reliance and emphasis upon Rule 801(d)(2)(D) and Rule 803 of the Federal Rules of Evidence. Defendants concede that "Rule 801(d)(2)(D) of the Federal Rules of Evidence has adopted the position for which appellant here contends"; and the appellant Commission contends that said Federal Rule has been adopted as the law of this state by *German v. Kansas City*, 512 S.W.2d 135 (Mo. banc 1974).

1. In *Chawkley*, the employee who made the admission was a party defendant along with the employer, thus making that case even closer to the instant one.

That contention with respect to the effect of *German* cannot be accepted. In *German*, the deposition testimony offered against the corporate defendant was that of its Vice President and General Superintendent who was in charge of the construction project where the accident occurred and was the officer designated by the corporate defendant to sign its interrogatory answers. These special circumstances brought the deposing officer within the long settled rule that such an executive does have the authority to bind the employer by an admission against interest. The citation by the court in *German* of the federal rule and quotation from the Advisory Committee Note can be at best no more than dictum. This comment by way of dictum cannot be believed as intended to reverse without discussion the very long line of cases which has existed in this state for well over a century.

■ It may be that the law of this state should be reexamined in the light of the authorities upon which the Commission relies. Any such reexamination of course could not be undertaken by this court, and all that we could do would be to transfer the case to the Supreme Court for that purpose. However, this case is not the right one in which to take that discretionary action for two reasons. In the first place, as soon as defendant Howard objected to the introduction of Happle's admissions against it, the Commission promptly agreed that the deposition statements could not be admitted for that purpose but suggested that the court not instruct the jury in that regard until the close of the evidence. Thus, the Commission in effect acquiesced in limiting its offer of the admissions for consideration solely as against defendant Happle. It should not be permitted to now expand that offer, nor should it be permitted to charge error against the trial court for acting in accordance with the position taken by the Commission during the trial.

In the second place, even if it be assumed arguendo that it was error to exclude these admissions against Howard, any such error was harmless under the facts of this case. The deposition statements by Happle which the Commission offered and which it now argues to be "critical," were as follows: (1) that when Taylor first started walking, Happle knew Taylor was traveling toward the path of his vehicle; (2) that Happle was traveling at not more than 20 to 25 miles per hour; (3) that Happle's best reaction time to get his foot from the accelerator to the brake would be one-half second; and (4) that traveling at 20 to 25 miles per hour, he could have stopped in 40 to 50 feet.

■ All these matters concern speed and distance, as to which parties should not be too strictly bound by their estimates. *Harrellson v. Barks*, 326 S.W.2d 351, 357[4] (Mo. App.1959); *Vaeth v. Gegg*, 486 S.E.2d 625 (Mo.1972); *Robb v. Wallace*, 371 S.W.2d 232 (Mo.1963); *Rudin v. Moss*, 349 S.W.2d 893 (Mo.1961). Furthermore, as to Taylor walking toward the path of the Howard truck, that was obvious and there was no controversy. As to Happle's rate of speed, his deposition testimony on its face was only a loose estimate.[2] Although Happle testified on direct examination at trial that he was driving between 35 and 40 miles per hour, he admitted on cross-examination that he had testified on deposition to a top speed of 20 to 25 miles per hour. Also to be noted is that the jury had the testimony of Happle's passenger and fellow worker that Happle's maximum speed was not over 25 miles per hour.

Concerning reaction time, that was significant only as it affected stopping time.[3]

---

2. The deposition on that point was as follows:

"QUESTION: Well, what was the maximum speed you reached from the time you started moving to the time you were in collision with Mr. Taylor?

"ANSWER: Oh, I don't know, probably twenty, twenty-five miles an hour. We never did drive very fast out there.

"QUESTION: Twenty to twenty-five miles an hour was the maximum speed you reached?

"ANSWER: Yeah."

3. The deposition statement on this point also reflects that Happle made only a loose, layman's estimate after being pressed:

"QUESTION: Do you have any estimate of the—of your reaction time? I know the aver-

With respect to the latter, Happle's deposition estimate of being able to stop in 40–50 feet was extremely close to the testimony of plaintiff's expert witness Captain McKinney, who testified to stopping distances of 38.87 feet at 20 miles per hour and 53.87 feet at 25 miles per hour.

Everything considered, the allowance of Happle's deposition as admissions against Howard would not have aided the Commission to any significant extent. The exclusion of the deposition for that purpose, if error at all, therefore could not have been prejudicial.

### B.

■ The Commission's next subpoint argues that Instruction No. 8 impermissibly deviates from MAI 34.02 and is confusing and contradictory when read with the other instructions. With respect to the matter of deviation, Instruction No. 8 does of course differ from MAI 34.02. That however was necessary because 34.02 by its suggested language would withdraw the evidence entirely from the jury, which would mean as to both defendants; whereas in the present case, the evidence was clearly admissible as against defendant Happle himself. Therefore, the variation in question was necessary and proper. See Committee's General Comment to MAI 34.01.

■ With respect to the alleged conflict with other instructions, the Commission points out that the verdict directing instructions required that the jury find either for both defendants or against both defendants.[4] The Commission goes on to argue

that the jury may have thought that Happle was negligent by reason of his deposition admissions, but that it could not find against defendant Howard because of the instruction that those admissions were not usable against it. The Commission concludes from this reasoning that the jury was wrongly compelled to reach a verdict for the defendants which it might not have otherwise voted. It is difficult to believe that the jury followed this tortuous chain of reasoning, especially when it was out for a period of only 37 minutes.

In any event, the trial court here declared under Instruction No. 8 the general principle with respect to this matter which had been invited and indeed insisted upon by the Commission. If the Commission disagreed as to the manner in which that general principle was stated, it was under an obligation to offer a clarifying or amplifying instruction. *Gilmore v. Union Construction Company*, 439 S.W.2d 763, 768 (Mo.1969); *State ex rel. Kansas City Power & Light Co. v. Campbell*, 433 S.W.2d 606, 612 (Mo.App.1968); *Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 86 (Mo. 1967). The Commission by its brief in this court does suggest a form of instruction which would come closer to expressing its view of the law. However, that substitute instruction was never suggested to or requested of the trial court. Absent such action, objection cannot be made now on appeal.

### C.

For its final subpoint, the Commission argues that the admissions in the Happle

---

age time is three-quarters of a second. Do you have any estimate of the reaction time or the time it would take you to react to get your foot from the accelerator to the brake?

"ANSWER: No.

"QUESTION: You say it's more or less than three quarters of a second?

"ANSWER: I say you might in a half a second.

"QUESTION: That would be your estimate of your reaction time?

"ANSWER: That would be the top; that would be the best I could do. Yeah."

4. Where an employer and employee are sued jointly for the employee's negligence, a finding

for the employee but against the employer would be inconsistent and therefore reversible. *Ward v. Lemke*, 602 S.W.2d 33, 35 (Mo.App. 1980) and cases there cited. However, no case has been found condemning instructions which permit a verdict against the employee but in favor of the employer. That suggests that a way out of the dilemma posed in the situation of the present case might be to submit separate forms of verdict for each of the defendants, but to also instruct the jury that it may not find against the employer if it finds in favor of the employee.

deposition should be admissible against defendant Howard on the authority of *German v. Kansas City, supra,* and *Blevins v. Cushman Motors,* 551 S.W.2d 602 (Mo. banc 1977). *German* has already been adequately discussed and shown to be completely different factually.

*Blevins* is equally distinguishable. In *Blevins* the deponent was the chief engineer of the corporate defendant and was the one who had been designated by the corporate defendant for the purpose of answering interrogatories. *Blevins* holds only that the designation of the deponent for the purpose of answering interrogatories made his similar answers on the same subject on deposition also within the scope of his authority. The facts in the present case are in no way similar.

### III.

■ During the course of closing arguments to the jury, counsel for defendant Howard argued to the effect that the reason everyone was present in the courtroom was that someone in the Highway Commission decided to file a lawsuit: "any time anyone wants to file a lawsuit, all they have to do is pay ... something like thirty dollars, and it get all of this together here." Counsel for defendant Happle adopted that remark and added: "anybody can sue anybody else under our system, whether there is merit to their claim or not."

When his turn came, counsel for the Commission then proceeded to argue as follows:

"May it please the Court, ladies and gentlemen of the jury, I want to say a couple of things first in response to what defense counsel has said.

You know I guess they would have you believe that the reason you are here is because a lawsuit was filed. Well, the reason you are here is not because a lawsuit was filed. The Judge wouldn't have you here if he didn't feel that you were—

MR. MULLEN: One moment.

MR. CRONAN: For the purpose of deciding this case.

MR. MULLEN: If the Court please, I will object to Counsel attempting to inject any supposed feelings of the Court, your Honor.

MR. CRONAN: That was opened up by Mr. Myerson, your Honor. He said the reason we are here was the filing of the lawsuit. I am entitled to show that that is not the reason we are here.

THE COURT: The objection will be sustained so far as it relates to anything, if anything, to any feeling of the Court.

MR. CRONAN: I don't mean to impose on you that the Court has any feeling for the plaintiff or for the defendants, but he has a duty and would not have us all here unless he felt that in fact under the law we should be here.

MR. MULLEN: If the Court please, I will object to this. I believe the Court has sustained the objection.

THE COURT: The objection will be sustained. Please move to another subject."

By the foregoing line of argument, counsel for the Commission was plainly attempting to align the judge in the jury's mind on the plaintiff's side of the case. The cases consistently hold such attempts to be improper: *McGowan v. Wells,* 324 Mo. 652, 24 S.W.2d 633 (Mo.1930); *Graesser v. St. Louis Public Service Co.,* 78 S.W.2d 551 (Mo.App. 1935); *Smith v. St. Louis Public Service Co.,* 84 S.W.2d 161 (Mo.App.1935); *Mooney v. Terminal R. Ass'n of St. Louis,* 352 Mo. 245, 176 S.W.2d 605 (Mo.1944). Nor can the attempted argument be condoned as justified retaliation: *McGowan v. Wells, supra; Graesser v. St. Louis Public Service Co., supra; Smith v. St. Louis Public Service Co., supra.*

The judgment is affirmed.

All concur.