Jean M. SCHULTZ, Plaintiff-Appellant,

v.

**WEBSTER GROVES PRESBYTERIAN CHURCH, ASSOCIATION,** Defendant-Respondent.

No. 51247.

Missouri Court of Appeals, Eastern District, Division Five.

March 17, 1987.

Stephen M. Hereford, Christy H. Garesché, Mann, Poger, Wittner & Hereford, P.C., Clayton, for plaintiff-appellant.

Daniel E. Wilke, Brinker, Doyen & Kovacs, P.C., Clayton, for defendant-respondent.

SIMEONE, Senior Judge.

On January 28, 1979, a bitterly cold, clear Sunday, after a 13" snowfall the day before, Mrs. Jean M. Schultz and her husband, both members of the Webster Groves Presbyterian Church, drove to attend church services at the defendant's church. Mr. Schultz left his wife out at the Moody Avenue entrance in front of a walkway. While he parked the car, she entered the church from that entrance. There are two other entrances to the church—the Lockwood Avenue or front door entrance and the side or parking lot entrance. The Moody Avenue entrance is the back entrance. The walk had been "pretty well" shoveled. Mrs. Schultz and her husband arrived at the Church at about 9:20 a.m. to attend the 10:00 a.m. Sunday School Services. As Mrs. Schultz went into the Church, she followed a young couple. There were people entering. It was "pretty crowded." There are two areaways. She entered the first area through the righthand door. She wore heavy "Girl Scout" boots of "very heavy traction." The soles were "like heavy rubber tread." She moved with the crowd and "didn't look down . . . to see what was the condition." The entrance area had a 4′ × 8′ rubber-tipped mat on the floor. When she entered the church, she walked on a floor mat, which she described as "squishy oversaturated." She then entered the second areaway where there was also a mat. That is where she fell. People were "stamping their feet," she "angled off" the mat, took "one step" and fell. She said, "As I entered the second areaway, I only took about one step and then I angled off the rug" and fell. Mrs. Schultz admitted that when she left the carpet and walked onto the tile floor she "didn't look down." There was a wall to the left of the door, which she could reach, and the carpet pad would have taken her to an area where there was a rail. She did not see any "puddles of water before she fell." When she fell, water was under her, and the terrazzo floor was "exceedingly saturated" with water. She did not lose consciousness, but learned later that she suffered a displaced fracture of the neck of the left femur which required a prothesis—a "steel ball" in the hip.

After the fall, her husband came in a few minutes. A physician, a church member, also spoke to her while she was on the floor, but did not treat her. Then a janitor, Dorsey Jessup, came up to her and said, "I'm sorry, I'm too late." At trial, this comment made by Mrs. Schultz was objected to and sustained. An offer of proof was made. The offer was that if Mrs. Schultz were permitted to testify she would state that the Church janitor "came running up when she was lying on the ground; and that he had his mop and a bucket in his hand and he looked down at her and he said, 'Oh, I guess I'm too late.'" At trial, counsel contended that the statement was admissible on two grounds: as an agent of the Church and as an excited utterance.

Eventually, an ambulance was called and Mrs. Schultz was taken to St. Luke's Hospital. She was operated upon by Dr. William S. Costen. The physician surgically inserted a Fred Thompson prothesis. She remained in the hospital until February 15, 1979. She was required to use a walker, crutches and eventually a cane. She now limps and uses the cane. When she left the hospital, a nurse's aid helped her.

Almost five years later, but within the period of limitations, on January 16, 1984,

Mrs. Schultz filed her petition for damages alleging negligence.

Trial was held in January, 1986. At the trial, in addition to the above facts, Ms. Dorothy Drinkhouse, a member of the church was called as a witness for the plaintiff. She had attended the services on the day of Mrs. Schultz's fall. She arrived at the church at about 20 minutes before 9:00—some 45 minutes before Mrs. Schultz. Ms. Drinkhouse entered through the Lockwood Avenue entrance. As she entered, she noticed that there was melting snow on the mat by the door and there was water on the floor. Counsel for respondent objected to this and moved that such testimony was irrelevant and that it be stricken. After a colloquy at the bench, his motion was sustained. Plaintiff then made an offer of proof that if permitted to testify, Ms. Drinkhouse would testify that when she arrived at the Church, she saw at both the Lockwood and the parking lot entrances an accumulation of "ice and snow and water," and that there were the same type of "runners" which were saturated with water. She would further testify that she told the janitor, Dorsey Jessup, that there was a lot of water accumulating at those entrances and that he'd "better mop up" before somebody gets hurt. However, the court sustained the defendant's objection on the ground of relevance "for better or worse."

In the trial, Ms. Winnie Shirreff, the financial secretary of the Church, testified. She stated that on that morning while she was teaching her Sunday School Class, parents who were bringing their children in through the Moody Avenue entrance talked about having seen somebody sitting on the floor. So she went to see if she could help. She saw Mrs. Schultz inside the church "sitting propped up against the wall." It was her testimony that at the time the floor was "dry." When she saw Mrs. Schultz she went to find help, told one of the officers, Mr. Graham, and then went back to her classroom. Mr. Graham went to the scene of the fall, and he too testified that the floor was dry. The physician attending services then came up; he asked plaintiff how she fell and she said "she didn't know what happened, she was standing there waiting for her husband, and the next thing she knew she was sitting down—or was down."

At the close of the evidence, the trial court instructed the jury. Instruction No. 6[1] told the jury that their verdict must be for the plaintiff "and you must assess a percentage of fault to defendant" if it believed the facts stated in that instruction. The court also gave Instruction No. 8.[2] This instructed the jury to "assess a percentage of fault" to plaintiff if it believed plaintiff either failed to look where she was walking or failed to support herself by use of available rails, bars or walls. The court refused to give Instructions A, B and C offered by plaintiff which did not refer to comparative fault.

After argument, the jury returned a unanimous verdict for the defendant. The

---

1. Your verdict must be for plaintiff and you must assess a percentage of fault to defendant if you believe:

First, there was water on the floor of defendant's church and as a result the floor was not reasonably safe for Church members, and

Second, plaintiff did not know and by using ordinary care could not have known of this condition, and

Third, defendant knew or by using ordinary care could have known of this condition, and

Fourth, defendant failed to use ordinary care to remove it, and

Fifth, as a direct result of such failure, plaintiff was injured.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

2. You must assess a percentage of fault to plaintiff if you believe:

First, either:

plaintiff failed to look where she was walking, or plaintiff failed to support herself by use of available rails, bars or walls, and

Second, plaintiff, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

jury found that plaintiff was 100% at fault, and defendant was not at fault. Judgment was entered thereon.

On appeal, plaintiff contends that the trial court erred (1) in refusing to permit the testimony of Dorothy Ann Drinkhouse because her testimony relating to the other entrances was relevant and had probative value to show the condition of the Moody Avenue entrance and to show notice to the defendant of the condition of that entrance; (2) in refusing to permit plaintiff to testify as to the statement made by the custodian, Dorsey Jessup, that he was "too late" because it was an excited utterance and because the statement qualifies as an admission of an agent which is binding upon the principal; (3) in giving instruction 8 and in refusing to give Instructions A, B and C and Verdict Form B for the reason that there was no evidence of any contributory fault by plaintiff.

We disagree and affirm the judgment.

■■■ Certain basic principles relate to a proceeding of this kind. The general duty owed to an invitee by the owner of property is the exercise of reasonable and ordinary care in making the premises safe. *Grube v. Associated Dry Goods, Inc.,* 663 S.W.2d 310, 311 (Mo.App.1984). The liability of a landowner to an invitee is based upon its superior knowledge of a defective condition on the premises. The knowledge may be actual or constructive. Actual knowledge may be inferred from the evidence that an agent or employee knew of the dangerous condition. If there is no such showing, then there must be evidence that the condition had existed for such a length of time to constitute constructive notice and that defendant, in the exercise of ordinary care, should have known of the condition. *Taylor v. F.W. Woolworth Co.,* 592 S.W.2d 210, 211 (Mo.App.1980) and cases cited therein. Furthermore, if the landowner realizes that the condition involves an unreasonable risk to persons lawfully on the premises who would not know of the condition, and thereafter fails to make the premises safe or warn of the condition and risk involved, then it is negligent and liable. *Blackwell v. J.J. Newber-*

*ry Co.,* 156 S.W.2d 14, 26 (Mo.App.1941); *Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599 (Mo. banc 1969). The decisions also hold that there is no liability for injuries resulting from a dangerous condition which is obvious, and as well known to the plaintiff as to the defendant. *Schmoll v. National Shirt Shops,* 354 Mo. 1164, 193 S.W.2d 605, 607 (1946); *Heidland v. Sears Roebuck & Co.,* 233 Mo.App. 874, 110 S.W.2d 795, 799 (1937).

The appellant does not dispute these general principles, but contends in her first point that the court erred in refusing to admit the testimony of Ms. Drinkhouse relating to the conditions at the Lockwood and parking lot entrances in order to show the condition at the Moody Avenue entrance.

■■■ The trial court did not err as to this issue. The proffered testimony was not logically or legally relevant to show the condition of the Moody Avenue entrance. First, it was not relevant to show the condition of that entrance because there was sufficient evidence related by the plaintiff to show the condition of that entrance. Neither was the proffered testimony relevant to show notice to the defendant. Such proffered testimony related to a different place, to a different time (some 45 minutes earlier) and a different location. The general rule is that it is not permissible, for the purpose of establishing whether a condition at one place is dangerous, to show conditions at places other than the one in question. *Kinzel v. West Park Investment Corporation,* 330 S.W.2d 792, 796 (Mo. 1959). And, while it has been held that evidence of other "accidents" of like character caused by the same condition and occurring under substantially the same conditions is admissible to show the dangerous character of that particular place, *Blackwell v. J.J. Newberry, supra,* no absolute rule can be set forth. The rules of "auxiliary principles of policy" also play a part. *See* IA Wigmore, Evidence, sec. 29a (Chadbourn Ed.1979). The trial court has discretion to determine whether such evidence may confuse the issues. *Blackburn,*

*supra,* 156 S.W.2d at 20; *Henwood v. Chaney,* 156 F.2d 392, 397 (8th Cir.1946).

Appellant presses upon us *Vinyard v. Vinyard Funeral Home, Inc.,* 435 S.W.2d 392 (Mo.App.1968). There, plaintiff obtained a judgment for injuries sustained from a fall on a ramp on defendant's dimly-lit parking lot. Defendant challenged, *inter alia,* the admission of evidence about other patrons slipping on the parking lot. The ramp was such that a person walking on it could start out on a rough surface paved with asphalt and then cross over onto a smooth surface spread with a clear liquid sealer. Plaintiff was unaware of any difference in the two surfaces. She fell on the slick surface. The defendant's prior knowledge that the sealed surface was dangerously slick when wet was shown partly by the complaints of other patrons, and the admission of testimony of a witness that she had a fall on the sealed area of the lot but on a different ramp. This court could not say that the trial court erred in admitting the evidence and affirmed the trial court's discretion in the admission of such evidence. Each ramp was built and paved over with the same material at the same time. Each was treated simultaneously with the same sealing compound. *Vinyard* does not resolve the issue presented here. *Vinyard* is in accord with the proposition that logically, an inference may be made from the nature of a condition in one place to the condition at another place in the vicinity if the two places are so related that they "form parts of a homogeneous area.... In such case the condition or quality of the one place is relevant to show the condition or quality of the other." 2 J. Wigmore, Evidence, sec. 438(2)(c) (Chadborn ed. 1979). *Vinyard,* and the principle stated in Wigmore, do not support the plaintiff here. There were no parts of a homogeneous area in the case at bar. There were three separate entrances, the places were different and the testimony sought to be introduced related to a different time. Hence, the trial court did not err in refusing to admit the proffered testimony of Ms. Drinkhouse since such evidence was not relevant to prove either the condition of the Moody entrance or notice, actual or constructive, to the defendant as to that entrance.

■ Appellant's reliance on *Stafford v. Fred Wolferman, Inc.,* 307 S.W.2d 468, 473 (Mo.1957) that the presence of water alone on the covered surface of the floor supports an inference of a dangerous condition to an invitee does not aid her in this regard. There was here direct testimony, although contradicted, that water existed at the Moody entrance. *Stafford* does not resolve the issue as to whether the evidence of the condition of the other two entrances should have been admitted. *See also Zacher v. Missouri Real Estate & Insurance Agency,* 393 S.W.2d 446, 449 (Mo.1965).

■ Appellant's second point is that the trial court erred in refusing to admit the testimony of the appellant relating to the statement of the janitor, Dorsey Jessup— "I'm sorry, I'm too late" because such statement was an excited utterance and an admission against the principal. There was no error in this regard.

■ As to an excited utterance, the test is not whether the statement was excitedly made, but whether in connection with a startling or unusual occurrence, sufficient to overcome normal reflection, ensuing declarations or words are a spontaneous reaction to the event and whether the statement is a spontaneous by-product of the event. *Jones v. Wahlic,* 667 S.W.2d 729, 730–731 (Mo.App.1984)—discussion of *res gestae; Wren v. St. Louis Public Service Company,* 333 S.W.2d 92, 95 (Mo.1960). This court has stated that the excited utterance rule permits the admission of an out-of-court statement made by a declarant who has been subjected to a startling event only when made under immediate and controlling domination of the senses produced by the stress of the startling event. See *State v. Boyland,* 725 S.W.2d 111 (Mo.App. 1987). Furthermore, in approaching the issue as to the admissibility of such statements, the statements should always be regarded as presumably inadmissible, and the burden rests upon the party offering the declaration.

The proffered statement of the janitor was not made at the time of the fall, was not part of the occurrence and was not made by a declarant who was subjected to a startling event, but was made some time thereafter, while the plaintiff was on the floor. The physician had seen her, persons were around her, and after Dorsey was informed of the fall by Ms. Shirrell, he came up and allegedly made the statement.

Such a statement does not constitute an excited utterance within the meaning of that term and the principles relating thereto.

 Neither is such statement by Jessup admissible as against the defendant-principal. The established rule in Missouri is that a statement by an employee is not admissible against the employer unless the admission is made within the scope of the employee's employment; and to be within the scope of his duties, the employee usually must have some executive capacity. This doctrine was established long ago in *Rogers v. McCune*, 19 Mo. 557 (1854) and has been followed ever since. *Mo. State Hwy. Com'n v. Howard Const. Co.*, 612 S.W.2d 23, 26 (Mo.App.1981); *Roush v. Alkire Truck Lines*, 299 S.W.2d 518 (Mo. 1957); *State v. Shain*, 340 Mo. 145, 101 S.W.2d 14, 17 (1936); *Shelton v. Wolf Cheese Co.*, 338 Mo. 1129, 93 S.W.2d 947, 953 (1936); *See Rudzinski v. Warner Theatres, Inc.*, 16 Wis.2d 241, 114 N.W.2d 466 (1962).

Lastly, appellant contends that the court erred in refusing to give offered Instructions A, B and C and Verdict Form B, and in giving Instruction No. 8. She contends that failure to give the offered instructions was error because there was no evidence to support a finding of contributory fault or failure to look where she was walking. We do not believe the court erred in giving and refusing the instructions it did. However, the jury found that the plaintiff was 100% at fault and not entitled to recover and also found that the defendant was not negligent. It follows that any error in the instruction was not harmful and is irrelevant. *Koch v. Bangert Bros. Road Builders, Inc.*, 697 S.W.2d

315, 317 (Mo.App.1985); *Wilson v. Tabor*, 703 S.W.2d 4, 6 (Mo.App.1985); *Hritz by Hritz v. Slawin*, 706 S.W.2d 296, 297 (Mo. App.1986); *Sperry v. Huse*, 725 S.W.2d 111 (Mo.App., 1987).

The judgment is affirmed.

SNYDER, C.J., and CARL R. GAERTNER, J., concur.