Charles **RICHARDSON**, (Plaintiff) Respondent,

v.

Otto H. **COPE**, (Defendant) Appellant.

No. 49642.

Supreme Court of Missouri,

Division No. 1.

Sept. 9, 1963.

Dorman Steelman, Salem, Samuel Richeson, Dearing, Richeson & Weier, Hillsboro, for appellant.

William E. Seay, Salem, Granville L. Gamblin, Clayton, for respondent.

HOLMAN, Judge.

In this action plaintiff sought to recover damages in the sum of $85,000 for personal injuries sustained when the motorcycle he was operating collided head on with defendant's automobile. The trial resulted in a verdict for defendant. Plaintiff's motion for a new trial was sustained by the trial court because of "errors committed in the giving of Instructions No. 5 and No. 6." Defendant has appealed from the order sustaining plaintiff's motion for a new trial.

The collision in question occurred between 8 and 8:30 p. m. on Saturday, July 12, 1958, on east-west Highway No. 32 at a point about two miles west of Salem, Missouri. Plaintiff was proceeding in an easterly direction on the motorcycle and defendant was driving his Plymouth automobile westwardly on said highway. Bob Conaway was seated behind plaintiff on the motorcycle at the time of the collision.

Bob Conaway testified that he met plaintiff in Salem at about 5 p. m. on the day of the casualty; that they went into Halbrook's Tavern and drank one beer and then they both got on the motorcycle and rode to Licking, Missouri, a distance of 22 miles; that he rode on the seat behind plaintiff; that while in Licking they drank another beer and later started home; that the motorcycle was being driven about 45 or 50 miles per hour and its headlight was lighted; that they were traveling east on Highway 32 and the motorcycle was on the south side of the road; that as they went over a sharp rise in the road he saw defendant's car completely on the south half of the road; that plain-

tiff swerved the motorcycle to the right about five feet but struck the left headlight of defendant's car; that defendant's car was being operated about 20 or 25 miles per hour at that time; that the light on the motorcycle would reveal objects for a distance of 15 or 20 feet, and they were 15 or 20 feet from defendant's car, "which had no lights," when he first saw it.

Plaintiff testified that it was "dusky dark" when they left Licking to return to Salem and he turned the headlight on at that time; that his headlight would reveal objects about 20 feet away; that he was operating the motorcycle at a speed of from 40 to 50, possibly 55, miles per hour; that he was driving about the middle of the south lane when he came up over a hill, and when the light of his motorcycle was projected downward he was 20 feet from defendant's car which was being driven on the south side of the road; that he applied his brakes and swerved to the right, but hit the left front of the automobile; that he was then two or three feet south of the center line of the highway, and he saw no lights on defendant's car.

Plaintiff read from a deposition of defendant, as an admission, an answer to a question in which he stated that his lights were not on at the time the accident occurred. However, in response to a subsequent question, he stated: "I don't recall having turned on any lights. When I got out in front of my car, there was one of my lights burning and when I went around behind the car to turn my dogs out, a pair of foxhounds were there, my tail lights were burning."

On behalf of the defendant, Trooper D. L. Walker of the highway patrol, testified that he was notified of the collision at 8:35 p. m. and arrived at the scene ten minutes later; that he found defendant's automobile on the north side of the highway with each of the left wheels about two feet north of the center line; that dirt which had been knocked off of defendant's automobile was in the westbound lane under defendant's car; that defendant's car had left skid marks on the highway with the marks from the left wheels starting near the center line and angling to the north; that there were no tire marks from the defendant's car in the south lane and the skid marks in the north lane continued to where the wheels of the car stopped after the collision; that there were two "dug out" places in the blacktop on the south side which were made by the motorcycle "after it was hit and got away from the driver"; that he talked with the plaintiff the next day at the hospital and that plaintiff told him that he had been drinking, and that the lights of his motorcycle had a habit of going off.

O. C. Naramore, who lived on Highway 32 about eight miles west of the scene of the collision, testified that he saw a motorcycle come by his home when it was "dusk dark" on the day of the collision, and that the light of the vehicle was going off and on while it passed his place; that it was off more than it was on; that to his best judgment the motorcycle was being driven at 60 miles per hour.

Lynn Adam testified that he arrived at the scene at about 8:25; that his car was the second to reach the scene after the collision; that defendant's car was on the north side of the highway with the left side thereof about one and one half or two feet north of the center line; that the right headlight of the car was burning and that no light was burning on the motorcycle; that the left rear wheel of defendant's car was six inches closer to the center line than the left front wheel.

Defendant, who was 74 years of age at trial time, testified that his home was three miles west of Salem on Highway 32; that he was going fox hunting on the occasion in question and had two hounds in the trunk of his car; that when he left home he first drove east; that he then changed his mind as to the place where he would release his dogs, and turned around in a driveway about one quarter of a mile east of the point of the collision; that after turning around he drove west on the highway toward Licking; that his car was on the right side—north

side of the highway, and no part of the car was on the left side of the road; that he did not see the motorcycle, nor any headlight, before the collision; "I cannot call to mind of ever braking my car, of ever stepping on the brake and skidding my car, but the marks are there and everything." He stated that he could not remember whether or not he had turned the lights on but that when he got out of the car after the collision the right headlight was burning (exhibits in evidence show that the left headlight was torn from the car at the time of the collision); that his car stopped immediately upon being struck by the motorcycle; "it didn't seem like I drove it an inch farther."

Instructions 1 and 2 submitted plaintiff's case upon the hypothesized negligence of defendant (1) in driving his car on the left side of the highway, (2) in failing to turn his car to the right of the center of said highway so as to pass the motorcycle without interference, and (3) in operating his automobile "without two lighted headlamps."

■ The instructions which the trial court found were erroneous were offered by defendant and submitted issues concerning plaintiff's contributory negligence. Instruction No. 5 reads as follows:

"The court instructs the jury that if you believe and find from the evidence in this case that on the occasion in question Mr. Cope was operating his automobile westwardly over and along Highway 32 in Dent County, Missouri, and that the plaintiff was operating his motorcycle eastwardly over and along said highway, at a time of day which was more than one-half hour after sunset, and in the nighttime, and if you find that the plaintiff did operate his motorcycle in the center of the said highway, and did not operate his motorcycle on the right half of the roadway, or if you find that the plaintiff operated his motorcycle at a rate of speed which was high, excessive and dangerous under all of the facts and circumstances then existing according to the evidence, or if you find that the plaintiff was operating his motorcyle at a time of day which was more than one-half hour after sunset, and in the nighttime, without having a burning headlight directed to the front thereof and clearly visible at a distance of 500 feet under ordinary atmospheric conditions, and if you find that in so operating his motorcycle in any or all of the particulars aforesaid the plaintiff was negligent and that such negligence of plaintiff, if any, directly contributed to cause the collision in question and plaintiff's injuries, then the plaintiff cannot recover against the defendant, and your verdict must be in favor of the defendant; and this is true, without regard to whether or not you find that the defendant was negligent under other instructions of the court."

The main contention of plaintiff as to error in said instruction is that there was no evidence to support the submission of plaintiff's negligence in not operating his motorcycle "on the right half of the roadway." As best we understand plaintiff's argument, it appears that he bases this contention on the fact that no witness testified that he saw the motorcycle on the left or north side of the highway.

We have concluded that there was substantial evidence to support the submission of plaintiff's failure to operate his motorcycle on the right half of the roadway. This for the reason that there was an abundance of evidence to the effect that defendant's car was north of the center line of the highway at the time of the collision, and there is no dispute about the fact that the motorcycle struck the left front of said car. Therefore, if the jury believed those facts it could reasonably have found that plaintiff's motorcycle was not being driven on the right half of the roadway. In fact, if the jury believed the testimony to the effect that defendant's car was entirely on the north half of the roadway at the time the vehicles collided, the conclusion would be inescapable that plaintiff was not driving his motorcycle on his right half of the roadway. Therefore, as stated, we rule that there was sufficient sub-

stantial evidence to support the submission in question.

In his motion for new trial plaintiff has alleged that there was "no evidence whatever" to support the submission of the other two assignments of contributory negligence in Instruction No. 5. In his brief, however, he has not referred to any alleged deficiency in the evidence supporting said assignments, and it would therefore appear unnecessary that we rule on that contention. However, a reference to the foregoing statement of facts will clearly demonstrate that those assignments (excessive speed and no burning headlight) were supported by substantial evidence.

Plaintiff also contends that the instruction was erroneous because sufficient facts were not hypothesized in connection with the submission that he "operated his motorcycle at a rate of speed which was high, excessive or dangerous under all the facts and circumstances then existing according to the evidence." This contention is not preserved for appellate review. No grounds were stated at the time plaintiff objected to the giving of this instruction. Therefore, under Civil Rule 79.03, V.A.M. R., it was necessary for plaintiff to specifically allege the errors he desired to complain of in his motion for new trial. No complaint is made in the motion for new trial concerning the failure of Instruction No. 5 to include a proper hypothesis of the facts. Therefore, as stated, the point is not preserved for appellate review. Overton v. Tesson, Mo.Sup., 355 S.W.2d 909.

Instruction No. 6 reads as follows: "The court instructs the jury that if you believe and find from the evidence in this case that both parties were negligent, that is, if you believe and find from the evidence that the plaintiff was negligent as submitted to you in instruction No. Five, and if you also find that the defendant was negligent as submitted to you in instruction No. One or No. 2, and if you further find that the negligence of each directly contributed to cause the collision and plaintiff's injuries, then the

plaintiff cannot recover, and your verdict must be in favor of the defendant."

In defending the action of the trial court in holding this instruction erroneous, plaintiff first contends that it was error to give it because it refers to Instruction No. 5, and, since No. 5 was erroneous, then, as a natural consequence, No. 6 was also erroneous. That would be true if plaintiff were correct in his premise that No. 5 was erroneous. However, since we have heretofore held that No. 5 was not erroneous, there is no merit in the contention that No. 6 was erroneous because it referred to No. 5.

The other ground specified in the motion for new trial is that the giving of Instruction No. 6 was error because it "overemphasized the question of contributory negligence, if any, on the part of the plaintiff, and thereby confused and misled the jury." It is true that portions of this instruction constitute repetition of similar statements made in the instructions to which it refers. However, we see nothing in the instruction which unduly emphasized the issue of plaintiff's contributory negligence or which would tend to confuse or mislead the jury. The instruction should have been helpful to the jury in that it consolidated and explained the effect of similar statements separately made in the other instructions. "The matter of repetition or the elaboration of the same subject matter in an instruction is generally considered to be within the trial court's discretion and is not ordinarily held to be reversible error where not so considered by the trial court. Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449; Reidinger v. Adams, Mo.Sup., 266 S.W.2d 610." Greenwood v. Wiseman, Mo.Sup., 305 S.W.2d 474, 477.

In this case the trial court did grant a new trial because "of the errors committed in the giving of Instructions No. 5 and No. 6." It is clear, however, that there is nothing in that order to indicate that the court granted the new trial upon the discretionary ground that No. 6 was repetitious in

overemphasizing the issue of contributory negligence. Civil Rule 83.06(c) provides that "If the trial court grants a new trial without specifying discretionary grounds, it shall never be presumed that the new trial was granted on any discretionary grounds." Since we may not presume that the trial court granted the new trial on a discretionary ground, and since we are of the opinion that the instruction is not erroneous in the respects specified by plaintiff, we accordingly rule that the trial court did not err in giving said instruction.

As indicated by the foregoing, we rule that the court did not err in giving either Instruction No. 5 or No. 6, and it accordingly follows that the order of the trial court granting plaintiff a new trial is set aside and the cause is remanded with directions to reinstate defendant's verdict and judgment.

All concur.