**Elizabeth Ann VINYARD, Plaintiff-Respondent,**

v.

**VINYARD FUNERAL HOME, INC., Defendant-Appellant.**

No. 32971.

St. Louis Court of Appeals.

Missouri..

Nov. 19, 1968.

As Modified Dec. 18, 1968.

Motion for Rehearing or for Transfer to the Supreme Court Denied Dec. 18, 1968.

———◆———

Dearing, Richeson, Weier, Roberts & Wegmann, J. Richard Roberts, Hillsboro, for defendant-appellant.

Thurman, Nixon, Smith & Howald, Robert Lee Smith, Hillsboro, for plaintiff-respondent.

CLEMENS, Commissioner.

Plaintiff got a verdict and $13,000 judgment for injuries from a fall on defendant's parking lot. (Plaintiff was the daughter-in-law of the corporate defendant's president.) Defendant appeals, challenging the sufficiency of plaintiff's evidence, the form of her verdict-directing instruction, and the admission of evidence about other patrons slipping on the parking lot.

Defendant contends the evidence failed to show that its premises were unsafe and, even so, that the condition was undiscoverable by plaintiff. We recite the verdict-consistent evidence.

In short, one rainy night plaintiff slipped and fell when she stepped from a roughly paved surface onto a smoothly paved surface of a ramp in defendant's dimly lighted parking lot. The defendant knew the smoothly paved area was slippery when wet. In more detail we recite the evidence about the parking lot, the paving, plaintiff's fall, and defendant's knowledge of danger.

The plaintiff fell after she had parked her car and was walking up a ramp toward the defendant's funeral home. Its parking lot is flanked by the president's residence on the south and by the funeral home on the north. The ground slopes upward from south to north, toward the funeral home. The parking lot is on two levels, connected by paved ramps at the front and the rear. The lower level adjoins the residence and the upper level adjoins the funeral home. Photographs indicate the ramps are about 30 feet wide and 30 feet long. Expert testimony showed the west ramp's grade was 14 percent, i. e., a rise of 1.4 feet for each 10 feet of length. This would indicate there was a rise of 4.2 feet from the lower to the upper level.

The parking lot was laid out in May, 1961, about eighteen months before plaintiff's fall. It was paved with asphalt, making a rough surface. In September, 1961—fourteen months before plaintiff's fall—the defendant spread a clear liquid sealer on the upper level of the parking lot. This sealed area extended half way down the ramps; it was smoother than the unsealed area and slick when wet. Thus a person walking up the ramp would start out on a rough surface and cross over onto a smooth surface. Daylight photographs show the two surfaces differ only slightly in color.

Before her fall plaintiff was unaware of any difference in the two surfaces. She had used the parking lot before but only when visiting her in-laws' residence south of the parking lot. Thus, she had used only the roughly surfaced lower level of the lot. On the night of November 11, 1962, plaintiff intended to go to the funeral home to visit the family of a deceased friend. It had been and was drizzling rain. The parking lot was lighted, but dimly, by a single, shaded light bulb atop a post fifteen feet from where plaintiff fell. The shade over the bulb directed the light downward. Plaintiff parked her car on the lower level, near the west ramp, intending to walk up the ramp to the upper level and then into the funeral home. This was a customary route for patrons. Plaintiff got out out of her car, walked around its rear, and started up the ramp. All this was on the rough, unsealed surface. Plaintiff said: "It was dimly lit, it wasn't bright, but I could tell there was pavement there and I could see where I was going, but I couldn't tell the

difference in the pavement." She suddenly "hit this slick place and it was slick as glass, and when I fell, I fell very quickly." This was plaintiff's first step onto the slick, sealed surface, half way up the ramp.

Defendant's prior knowledge that the sealed surface was dangerously slick when wet was shown in three ways: observations by defendant's officers and employees, remedial actions taken by them, and notice received through other patrons' complaints of slickness.

As soon as the clear sealer was applied on the lot's upper level, the defendant's officers and employees noticed the surface was slick when it rained. They discussed the condition numerous times; they spoke to paving contractors about "roughing it up" but did nothing except spread sand on the smooth paving when it rained. (This, however, was not done on the night plaintiff fell.) This sanding followed complaints by patrons about the slickness. These complaints began right after the sealer was applied and came from several persons.

Without objection, plaintiff showed that three years after her fall the defendant re-sealed the upper level with the same liquid compound. But this time the defendant mixed the liquid sealer with an equal amount of sand. This mixing followed the manufacturer's recommendation for use where the user wants a "non-slip protective surface."

■ The defendant contends the trial court should have directed a defendant's verdict since the evidence of the condition of its parking lot did not show an unreasonable risk of injury to visitors and that the condition was not discoverable by visitors. The two elements of liability—dangerous condition and non-discoverability—are interlaced, since a reasonably discoverable danger does not create an unreasonable risk. (See Albers v. Gehlert, Mo., 409 S.W.2d 682 [3], citing the rationale in 2 Restatement of Torts, 2d, p. 219.)

The determinative, interrelated factors of unreasonable risk here are (1) a slope of 14 percent, (2) a surface that became slick when wet, (3) a change of texture of the surface from rough to smooth, and (4) dim lighting near the point of fall.

We need not analyze and compare all the cases briefed. The parties' contentions are adequately presented by two cases decided at the same term by the Supreme Court. Defendant relies on Schmoll v. National Shirt Shops, 354 Mo. 1164, 193 S.W.2d 605 [1–7], and plaintiff on Corley v. Kroger Grocery & Baking Co., 355 Mo. 4, 193 S.W. 2d 897 [2–5].

In attacking the sufficiency of plaintiff's evidence, defendant says the National Shirt Shop case is "very close to the case at bar." There the plaintiff entered the defendant's store on a rainy day, walking through a slightly inclined entrance lobby. On other rainy days the defendant had spread a rubber mat in the entrance way. The wet flooring was terrazzo and embedded in it were polished brass letters spelling out the defendant's name, each letter about four by six inches. All this was seen by the plaintiff. She stepped on the wet, brass letter "A", slipped and fell. The court said that "Plaintiff had as much knowledge of the condition of the brass lettering as had defendant" and reversed plaintiff's judgment, holding: "There is no liability of defendant for injuries from dangers that are obvious, or as well known to plaintiff as to defendant." Later, in the case of Vogrin v. Forum Cafeterias of America, Mo., 308 S.W.2d 617 [2], the Supreme Court explained its ruling in the National Shirt Shop case: "The principal basis of that decision was that this lettering was obvious, 'was seen by plaintiff; and by her seen to be wet'; and that 'plaintiff had as much knowledge of the condition of the brass lettering as had defendant.'"

Ours is more akin to the Kroger case (193 S.W.2d 897). There customers entered defendant's store over a metal strip across the floor at the doorway. The strip

had been grooved to afford good traction but had worn smooth. On the day of plaintiff's fall, a film of snow covered the metal strip. This court reversed the plaintiff's judgment, but on transfer the Supreme Court affirmed, saying: "We think the majority of the Court of Appeals inadvertently overlooked testimony to the effect that the smoothness of the metal strip was hidden from view at the time by a film of snow. * * * The snow was obvious but the smoothness underneath was hidden by the snow. It was the combination of the snow and the smoothness of and moisture on the metal strip that occasioned plaintiff's injuries."

■ We hold, contrary to defendant's contention, that plaintiff's evidence did show an unreasonably dangerous condition: We first have the combination of the 14 percent grade and the slick, wet surface; from this the jury could find that the defendant maintained a dangerous condition in its parking lot. We also have a change from rough to smooth paving, combined with dim lighting that made that change difficult to detect; from this the jury could find that plaintiff did not know, and by using ordinary care could not have known, of the dangerous condition. Certainly, with this evidence reasonable minds could differ about whether there was an unreasonable risk of injury. So, the issue was for the jury, not for us. We deny defendant's first point. (Tharp v. Monsees, Mo., 327 S.W.2d 889 [7, 8].)

■ Defendant's Point II is a three-pronged attack against plaintiff's verdict director, a modified MAI 22.03, Invitee Injured. As urged by plaintiff, we will consider defendant's point only to the extent that it was specified in defendant's motion for new trial and carried forward into its brief here. (Lands v. Boyster, Mo., 417 S.W.2d 942 [3]; Richardson v. Cope, Mo., 370 S.W.2d 318 [2].) The point raised below is unlike the point made here. Plaintiff's verdict director was based on MAI 22.03 but she necessarily modified paragraphs "First" and "Fourth". It read:

*"Instruction No. 3"*

"Your verdict must be for the plaintiff if you believe: First, plaintiff fell in defendant's driveway on a wet slope which was covered with an asphalt sealer which caused it to be slick when wet and as a result when it was wet said place was not reasonably safe for visitors, and

"Second, plaintiff did not know and by using ordinary care could not have known of this condition, and

"Third, defendant knew or by using ordinary care could have known of this condition, and

"Fourth, defendant failed to use ordinary care to make said slope where plaintiff fell reasonably safe for visitors or to warn plaintiff of it, and

"Fifth, as a direct result of such failure, plaintiff was injured."

The only specific objection made below was that plaintiff's verdict director "gives the jury a roving commission by simply allowing a finding for plaintiff if the jury found that *the place of the fall was 'not reasonably safe for visitors'* and since said instruction does not give the jury any direction nor guidance as to what is reasonable." (Our emphasis.) This complaint was obviously aimed at paragraph "First" of plaintiff's verdict director. None of the objections now made in defendant's brief is within the ambit of the quoted objection defendant made below. In this court the defendant makes three separate objections. (1) Defendant complains there was no evidence its parking lot was unsafe. This was not mentioned in the after-trial motion. (2) Defendant complains that the verdict director "hypothesizes too many or too few facts." Again, this objection was not raised

below.[1] (3) Defendant says that the instruction "gives the jury a roving commission to find defendant failed to use ordinary care *to make the area safe* for visitors without giving the jury any guide as to what defendant's duties in that regard were." (Our emphasis.) This is directed against paragraph "Fourth" of plaintiff's verdict director, not within the objection made below. Accordingly, we hold defendant's Point II preserves nothing for review.

■ Defendant's Point III concerns the admission of evidence that people complained to its officers and employees that the sealed surface was slippery when wet. Plaintiff offered this evidence to show that defendant knew its parking lot was slippery when wet. Witness Keith Vinyard was defendant's vice-president and plaintiff's husband. Testifying for plaintiff he was asked: "Now, Keith, after this sealer was put on did you receive any complaints from anyone visiting the funeral home?" Over defense objection that the question was hearsay unless limited to the same conditions as plaintiff's fall, the witness answered: "Yes, several people said it was slick." Later, witness Leroy Lucas, one of defendant's regular employees, was asked: "Did you yourself hear complaints of people that would come in and complain about it being slick when it was wet?" Over the defendant's hearsay objection Mr. Lucas answered: "I had heard different people comment on it that it was slick when it was wet."

These questions and answers were improper as hearsay if offered only to prove the fact that the sealed area was slick. But aside from the *fact* of slickness there was the issue of defendant's *knowledge* of slickness. Evidence of *complaints* of slickness made to defendant was relevant to the material issue of defendant's knowledge.

As said in Miller v. Brunson Const. Co., Mo., 250 S.W.2d 958 [9]: "Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply, but the statement may be shown. Evidence as to the making of such statement is not secondary but primary, for the statement itself may constitute a fact in issue, or be circumstantially relevant as to the existence of such a fact."

To support its claim of erroneous admission of this testimony about complaints of slickness, the defendant cites Blackwell v. J. J. Newberry Co., Mo.App., 156 S.W.2d 14. There the issue was not about complaints but about the admissibility of evidence about the *absence of other accidents.* Commenting on the obverse—the occurrence of other accidents—the court acknowledged their relevancy but pointed out a limitation referred to by Wigmore as "Confusion of Issues": " * * * the unrestricted admission of such instances might result in so multiplying the subordinate issues in a cause that confusion of mind would ensue and the main controversy would be lost sight of in the great mass of minor issues * * *." We have no such confusion here. The defendant's own witnesses later testified that the parking lot was slick when wet, and that the sealed upper area was slicker than the unsealed lower area. But to make her case the plaintiff was obliged to show that defendant's officers knew about the slickness. Under the circumstances of this case the trial court properly admitted evidence that this knowledge had come to them through complaints of patrons that the parking lot's sealed area was slick when wet. (Compare Corley v. Kroger, etc., supra, at 193 S.W.2d l. c. 899, and Flournoy v. Kuhn, Mo.App., 378 S.W.2d 264 [1]; and see 65A C.J.S. Negligence § 228.)

1. Were we to interpret this point relied on as adequate to preserve the point raised below, still we find no error. Paragraph "First" in MAI 22.03 shows as an illustrative hypothesis, "substance on floor which caused the fall." Here plaintiff modified that by substituting as her hypothesis, "wet slope which was covered by an asphalt sealer which caused it to be slick when wet." This modification complied with Civil Rule 70.01(e), V.A.M.R.

The defendant's last point challenges the admission of testimony by plaintiff's witness Martha Siebert about a fall she had on the parking lot. This, on the limited ground that her fall "did not occur under the same conditions nor at the same place as the one involving the plaintiff here." Before admitting Mrs. Siebert's testimony, the trial court ruled it would admit testimony of other falls if a foundation was laid showing "it is a wet condition and that the fall was on the so-called slick area of the driveway." The trial court overruled defendant's further objection demanding a broader foundation: that it should also show the same conditions and place as the plaintiff's fall.

Mrs. Siebert testified that during the same winter as plaintiff's fall she, too, had fallen on the sealed area of the parking lot. As said, there were two ramps leading up from the lower level of the lot. Plaintiff fell on the west ramp; Mrs. Siebert on the east ramp. She testified that on a rainy day she parked her car right on top of the ramp. As she got out of her car she turned around, slipped and fell.

To support its claim of error the defendant quotes Blackwell v. J. J. Newberry, supra, at 156 S.W.2d l. c. 20, where we ruled that evidence of other accidents "is admissible only where the party against whom the evidence is introduced is not, by the nature of the proof offered, deprived of an opportunity of developing, by cross-examination or otherwise, substantially all the circumstances under which such previous accidents happened * * *." That statement hardly helps defendant here since it had full opportunity to and did cross-examine Mrs. Siebert. The Newberry case tersely states the rule of admissibility: " 'The true solution of the conflicting considerations, then, is that evidence of the sort, when relevant, should be admitted, unless in the discretion of the trial Court it seems to involve a serious inconvenience by way of unfair surprise or confusion of issues. Such is the solution clearly pointed out by many Courts.' " Thus, the trial court has discretion to determine whether the offered testimony has any net probative value and, if so, to admit the testimony and let the jury assess its weight.

Here, the east and west ramps were substantially similar. Each was built and paved with the same material at the same time. Each was treated simultaneously with the same sealing compound. At the times of plaintiff's and Mrs. Seibert's falls, each was wet. Considering defendant's opportunity to cross-examine Mrs. Seibert and to develop any existing dissimilarities between the conditions surrounding the two falls, we cannot say the trial court erred in admitting Mrs. Seibert's testimony. That ruling was within the limitations stated in the Newberry case. Further, it was in accord with Cameron v. Small, Mo., 182 S.W.2d 565 [16], where the court said: "From the testimony of the witnesses it appears that others who slipped were caused so to do by the wet, slippery inclined surface of the ramp; the ramp was in such condition, it seems from the evidence, when the plaintiff sustained her injury. In view of the testimony of the smooth condition of the surface of the ramp 'in the middle where the traffic would be,' we cannot follow defendants' argument that, in order for the testimony to be admissible, it was necessary to make a showing that all of the persons, including plaintiff, slipped at precisely the same place on the ramp's surface."

No point preserved for review having shown material error affecting the outcome below, the judgment must be affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.