Robert O. HAUSER, Appellant,

v.

CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Respondent.

No. C7-83-186.

Supreme Court of Minnesota.

April 13, 1984.

Larry E. Stern, Minneapolis, for appellant.

Eric J. Magnuson, Roger R. Roe Jr., Mary W. Mason, Minneapolis, for respondent.

SIMONETT, Justice.

The trial court granted the defendant railroad a directed verdict in this FELA personal injury case because no negligence was shown. We affirm.

Plaintiff Robert O. Hauser sues his employer, defendant Chicago, Milwaukee, St. Paul and Pacific Railroad Company, for personal injuries under the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq.* (1976). At the close of plaintiff's case, the trial court granted the railroad's motion for a directed verdict and subsequently denied plaintiff's motion for a new trial. Plaintiff-appellant Hauser appeals. Aside

from a disputed evidentiary ruling to be discussed, the issue is simply whether there is any evidence of the railroad's negligence to go to the jury.

The injury occurred on the afternoon of November 28, 1978, while plaintiff Hauser and two other section laborers were cleaning a railroad switch. When Hauser attempted to dislodge a spike from underneath a rail by striking a claw bar with a spike maul, a metallic foreign body flew into his left eye. Hauser was not wearing his safety glasses at the time. The evidence shows that the metal fragment did not come from either the spike maul or the claw bar. This injury caused Hauser to lose the sight in his left eye. As the case was presented to the trial court and as it comes here, the issue of negligence centers entirely around why Hauser was not wearing his safety glasses.

Hauser was 52 years old at the time of his injury. From the time he began with the railroad in 1969, he had always been furnished safety glasses. The glasses had plastic frames, shatter-resistant lenses and adjustable metal bows, plus side shields. Hauser did not read the written instructions which came with the glasses when he received them. On one occasion, a representative of the manufacturer of the safety glasses came to Hauser's work area to offer assistance in adjusting glasses, but Hauser did not have his adjusted. The railroad has a safety rule, with which Hauser was familiar, requiring employees to wear their safety glasses when performing the kind of work Hauser was doing the afternoon of his accident. All safety rules, including the one on safety glasses, were reinforced by written exams every 2 years, as well as by a "Rule of the Day" program under which a safety rule was discussed by the employees every morning before work. Hauser had at least one prior incident when his wearing of the glasses had apparently protected him from an injury. Hauser said he knew the importance of wearing safety glasses and he admitted his foreman was quite insistent that they be worn. One co-worker testified that the foreman was very strict in enforcing the rule on wearing safety glasses.

The morning of the accident Hauser wore his safety glasses while clearing ice from a switch. In the afternoon, however, he did not wear his glasses, although one of the men working with him testified that he wore his. The foreman was absent in the afternoon. Hauser testified he did not wear his glasses because they were muddy and he could not see with them on, and, in addition, the glasses would slide down his nose, sometimes fall off when he bent over, and were causing soreness behind the ears.

On appeal, plaintiff-appellant Hauser argues that the railroad could be found negligent in failing: (1) to supply straps which would fit around the back of the head and keep the glasses on; (2) to adjust the glasses for Hauser; and (3) to provide adequate means for employees to clean their glasses when dirty. In response, the railroad says that straps were unnecessary because the safety glasses were easily adjustable to fit snugly and not slide down or off and that there were spare safety glasses, which Hauser could have used, in the truck the employees had driven to the work site. Hauser stated that his handkerchief was muddy and all he would have had to clean his glasses with in the afternoon was his coat sleeve. To this the railroad responded that even if this were so, ordinarily there was a water jug in the truck and there was running water about 2 blocks away at the roundhouse.

■■■ While on the witness stand, Hauser was asked if he had ever heard anyone at a safety meeting complain about the safety glasses. The trial court sustained defendant's hearsay objection and Hauser claims on appeal this was error. We agree. The testimony was offered not to prove the truth of any complaints (*i.e.*, that there was something wrong with the glasses) but to explain that Hauser did not himself complain because others were complaining for him and to prove notice to the railroad of complaints. *See, e.g., Webb v. Fuller Brush Co.*, 378 F.2d 500 (3rd Cir.1967); *Mabry v. Travelers Insurance Co.*, 193

F.2d 497 (5th Cir.1952). Several courts have allowed admission of testimony to prove notice where the declarant is unidentified. *See Smedra v. Stanek*, 187 F.2d 892 (10th Cir.1951); *Seaboard Air Line Railroad v. Ford*, 92 So.2d 160 (Fla.1956); *Vinyard v. Vinyard Funeral Home, Inc.*, 435 S.W.2d 392 (Mo.Ct.App.1968). Even if this evidence were received, as it should have been, we do not think it adds to Hauser's case. To the extent the evidence goes to explain why plaintiff Hauser did not complain to his employer, the evidence goes to plaintiff's negligence, not to the railroad's; to the extent the evidence might bear on the railroad's negligence, the offered testimony does not explain what the unidentified persons were complaining about. At best, we can say there was some evidence that employees complained about wearing safety glasses.

■ The Federal Employers' Liability Act provides that the railroad is liable in damages "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier * * *." 45 U.S.C. § 51 (1976). Although the Act expressly requires proof of negligence, the United States Supreme Court has applied the statute in a most liberal manner "by reducing the quantum of proof required for a plaintiff-employee to reach the jury to an absolute minimum." Steinberg, *The Federal Employers' Liability Act and Judicial Activism*, 12 Willamette L.J. 79, 80 (1975). If there is any evidence of negligence, the case should go to the jury. Directed verdicts for the employer are rare. Assumption of risk is no defense and contributory negligence only diminishes the amount of recovery. 45 U.S.C. §§ 53, 54 (1976). This relaxing of the customary strictures on a plaintiff's recovery is a recognition that FELA is a substitute for workers' compensation as an employee's remedy. For a good discussion, *see* 4 Larson, *Workmen's Compensation Law* § 91.77 (1984). Indeed, Larson suggests, as do other commentators, that only a "scintilla" of evidence is needed to establish the employer's negligence. Larson, *id.; see also* Note,

*Federal Employers' Liability Act: Apostasy of Sufficiency of Evidence Policy*, 42 Miss.L.J. 418, 424 (1971).

Thus it takes very little evidence for the plaintiff-employee to avoid a directed verdict. *See, e.g., Rogers v. Missouri Pacific Railroad*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Webb v. Illinois Central Railroad*, 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957); and the famous "bug bite" case, *Gallick v. Baltimore & Ohio Railroad*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) (employee bitten by a bug while working near a pool of stagnant water that the railroad had negligently permitted to stand by its tracks). Nevertheless, within this context, the employer is still held to the standard of the reasonably prudent person acting in the light of the circumstances, and directed verdicts are not unknown in appropriate instances. *See, e.g., Moore v. Chesapeake & Ohio Railway*, 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547 (1951); *Richardson v. Missouri Pacific Railroad*, 677 F.2d 663 (8th Cir. 1982); *Davis v. Burlington Northern, Inc.*, 541 F.2d 182 (8th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976); *Soto v. Southern Pacific Transportation Co.*, 514 F.Supp. 1 (W.D.Texas 1979), *aff'd* 644 F.2d 1147 (5th Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981). About the most we can say is that each case turns on its facts.

■ Here we must agree with the trial court that there is simply no evidence, even under the liberal FELA approach, to raise a jury issue on the defendant railroad's failure to use reasonable care under the circumstances presented by this record. We affirm.

Affirmed.

WAHL, Justice (dissenting).

I respectfully dissent. The majority opinion correctly determines the evidentiary issue and accurately sets out the law that has been developed by the courts in cases arising under the Federal Employers' Liability Act (FELA) but gets off the train

before reaching the destination indicated on the ticket. The United States Supreme Court has made clear that if there are probative facts which would support a verdict for the injured employee, the issue of the railroad's liability is to be decided exclusively by the jury. *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 504, 77 S.Ct. 443, 447, 1 L.Ed.2d 493 (1957), *reh'g denied,* 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 764 (1957). The policies of Congress, as interpreted by the Supreme Court, are to promote employee recovery and to broaden the jury's role. The question of the railroad's negligence is a close one, but our role in reviewing the trial court's order of a directed verdict is to "accept as true all of the evidence favorable to the adverse party and all reasonable inferences which can be drawn from the evidence." *Walton v. Jones,* 286 N.W.2d 710, 714 (Minn.1979). Considering the case in this light, I conclude that the railroad may have been negligent by not providing safety straps, by not providing better cleaning facilities, and by not taking more steps to ensure that the glasses were correctly adjusted and that its employees knew how to adjust them. There was sufficient evidence for reasonable persons to disagree. The fact that reasonable minds on this court reach different conclusions indicates to me that there was at least the scintilla of evidence required by the cases to take the issue of employer negligence to the jury. *Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Webb v. Illinois Cent. R.R.,* 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957); *Rogers v. Missouri Pac. R.R.* I would reverse and remand the case for trial.

TODD, Justice (dissenting).

I join in the dissent of Justice Wahl.

YETKA, Justice (dissenting).

I join in the dissent of Justice Wahl.

SCOTT, Justice (dissenting).

I join in the dissent of Justice Wahl.