Carl **HUNT** Plaintiff–Respondent,

v.

**NATIONAL SUPER MARKETS, INC.,**
**Defendant–Appellant.**

**No. 58103.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 23, 1991.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
May 15, 1991.

James A. Gottschalk, St. Louis, for defendant-appellant.

Stuart Cofman, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This "slip and fall" case arises out of injuries plaintiff/respondent, Carl Hunt [hereinafter Hunt] sustained when he fell in the aisle while grocery shopping at a super market. Hunt filed suit on July 2, 1987, in the Circuit Court of the City of St. Louis, against defendant/appellant, National Super Markets, Inc. [hereinafter National]. On December 7, 1989, a jury returned a verdict in favor of Hunt for $25,000, finding Hunt eighteen percent at fault and National eighty-two percent at fault. The trial judge subsequently reduced the total damage award to $20,500.

Because our review involves determining whether Hunt has presented sufficient evidence to submit the question of National's negligence to the jury, we must view the evidence presented at trial in the light most favorable to Hunt, giving him the benefit of all reasonable inferences to be drawn therefrom. *Prier v. Smitty's Supermarkets, Inc.*, 715 S.W.2d 579, 580 (Mo.App. 1986). However, we are not required or permitted to supply missing evidence or to give plaintiff the benefit of unreasonable, speculative, or forced inferences. *Hayes v. National Super Markets, Inc.*, 612 S.W.2d 819, 821 (Mo.App.1981).

The evidence reveals that on August 31, 1984, at approximately 8:00 p.m., Hunt and his wife entered the National store at 3830 South Grand Avenue in St. Louis, Missouri. Hunt and his wife each obtained their own grocery cart and began their shopping. They both noticed that there were many other customers in the store. After walking through most of the other aisles they entered the frozen food aisle from the front of the store and proceeded towards the back of the store. Hunt was approximately five to ten feet behind his wife and he had several items in his cart which blocked his view of the floor in front of him.

Two-thirds of the way down the aisle, Hunt slipped and fell, twisting his leg underneath him in such a way that he was unable to stand up on his own. Viewed from the front of the store, Hunt fell approximately three feet from the right side display cases which contained frozen vegetables.

Hunt remained on the floor after he fell, calling to his wife for help. After realizing she would be unable to lift Hunt by herself, she went for assistance. An unidentified security guard was standing approximately

35–40 feet away from where Hunt fell and Hunt's wife enlisted his help in picking up her husband. The unidentified security guard was employed by a security company which in turn was contracted with National to provide security in its stores during business hours.

Hunt and his wife testified at trial that a light blue substance caused the fall but neither could positively identify the substance. The substance covered approximately one square foot of the floor area and Hunt's wife characterized it in her testimony as "melting." Neither Hunt nor his wife were able to testify as to the origin of the substance or how long it was present on the floor before Hunt fell. Hunt and his wife also did not observe any other substances on the aisle floor.

After the security guard helped Hunt to his feet, the guard called to a young male employee of National who appeared with a broom to clear the area of the fall. Hunt's wife testified that she overheard the unidentified guard state to the unidentified employee: "I thought I told you to clean up this mess." Hunt testified that his recollection of this statement by the unidentified guard to the unidentified employee was: "I asked you before, you had something on the floor to go get something." National made a timely objection to both statements as being without a proper foundation and inadmissible hearsay. The trial court overruled these objections. Neither the unidentified security guard nor the unidentified National employee testified at trial.

National offered motions for a directed verdict at the close of Hunt's evidence and at the close of all the evidence. The trial court denied these motions. National filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The trial court denied these motions on February 22, 1990. This appeal follows.

National's first point on appeal alleges that Hunt did not make a submissible case of negligence and that the trial court there-

fore erred in failing to sustain National's motion for judgment notwithstanding the jury's verdict.

 The liability of a store owner to a business invitee is based upon the owner's superior knowledge of a defective or dangerous condition upon the owner's premises which results in injury. *Ward v. Temple Stephens Co.*, 418 S.W.2d 935, 938 (Mo. 1967). For Hunt to make a submissible case of negligence, he must have established that National had either actual or constructive knowledge of the dangerous condition. *Id.; Adams v. National Super Markets, Inc.*, 760 S.W.2d 139, 141 (Mo. App.1988). Actual knowledge may be inferred from the evidence that an agent or employee knew of the dangerous condition. *Taylor v. F.W. Woolworth Co.*, 592 S.W.2d 210, 211 (Mo.App.1979).

Hunt offered only the two versions of the conversation between the unidentified security guard[1] and the unidentified National employee as testified to by Hunt and his wife to prove that National had actual notice of the existence of a substance on the floor in the frozen food aisle which was creating a dangerous condition. Hunt relied on the two versions of this statement to show actual notice and did not offer any further evidence at trial to prove in the alternative that National had constructive notice.

These statements: (1) "I asked you before, you had something on the floor to go get something," and (2) "I thought I told you to clean up this mess," testified to by Hunt and his wife respectively, were objected to in a timely manner as impermissible hearsay. National's second point on appeal alleges that these two statements were hearsay and should not have been admitted by the trial court over objection into evidence. We must address National's second point before we can reach a determination of whether Hunt presented a submissible case to the jury.

Therefore, the security guard's statement cannot be considered as an admission attributable to National.

---

1. Hunt has admitted in his brief that the unidentified security guard was not an agent of National but instead could be characterized, as a matter of law, as an independent contractor.

Hearsay is: (1) an out of court statement; (2) offered for the truth of the matter asserted in the statement. O'Brien, Mo. Law of Evidence (2nd ed.), § 11–3. Both of the versions of this out of court statement were being offered by Hunt to prove that an agent of National and therefore National itself, had actual prior knowledge of a dangerous condition existing on the floor of the frozen food aisle. These two versions of the out of court statement by the security guard are the only evidence that Hunt presented to prove the required prior knowledge of National.

█ Hunt asserts that the two versions of the statement by the security guard were not hearsay and therefore admissible because they were not offered to prove the truth of the matter asserted in the statements but instead were offered simply to show that a National employee had knowledge of a particular fact, namely that a substance existed on the floor of the frozen food aisle prior to Hunt's fall.

Hunt cites only one case *Vineyard v. Vineyard Funeral Homes*, 435 S.W.2d 392 (Mo.App.1968), to this court to support his contention that the two versions of the statement by the security guard to the National employee were properly admitted as being out of court statements offered for the nonhearsay purpose of proving that National knew of the existence of the substance on the floor of the frozen food aisle. In *Vineyard* the plaintiff, who had fallen on the defendant's parking lot, offered the testimony of two employees of the defendant funeral home concerning complaints made by other customers that defendant's parking lot was slippery. The appellate court found that the trial court did not err in admitting the statements over a hearsay objection because "[e]vidence of complaints of slickness made to defendant was relevant to the material issue of defendant's knowledge." 435 S.W.2d at 396. The appellate court stressed that if the statements were "offered only to prove the fact that the sealed area was slick," the statements would be hearsay and inadmissible. The appellate court further stressed that the truth or falsity of the statements was

irrelevant; the fact that the statements/complaints were simply made is the relevant issue. *Id.; See Jordan v. Robert Half Personnel, Etc.*, 615 S.W.2d 574, 583 (Mo.App.1981) ("Where the evidence is offered only to show that the statement has been made without regard to the truth or falsity of the statement itself, the evidence is primary and it not hearsay.")

The statements admitted in *Vineyard* are distinguishable from the statements in the case at bar because in *Vineyard* the statements were made by the defendant's employees and the statements concerned the receiving of complaints sometime before the plaintiff fell. In the case at bar, the two versions as testified to by Hunt and his wife, of the statement by the security guard were not made by an employee of the defendant/National. Also, contrary to Hunt's assertion that these versions of the security guard's statement were being offered for the nonhearsay purpose of showing knowledge, the contents of the guard's statement must have been offered to prove the truth of the matter asserted because Hunt offered no other evidence of National's prior knowledge of the existence of the substance on the floor of the frozen food aisle. If the truth or falsity of the guard's statement was not relevant and was in fact offered simply to show that National knew of the existence of the substance, knowledge would only be from the time that the statement was made by the security guard—after Hunt fell.

█ Because the trial court erred in admitting the hearsay testimony of Hunt and his wife regarding their respective versions of the guard's statement, and because Hunt did not offer any other evidence of actual or constructive notice, Hunt did not make a submissible case of National's negligence.

Reversed.

KAROHL and GRIMM, JJ., concur.