Robert **MECKFESSEL,**
Plaintiff/Appellant,

v.

**FRED WEBER, INC.,** et al.,
Defendants/Respondents.

No. 66321.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 27, 1995.

---

Joseph A. Frank, The John J. Frank Partnership, St. Louis, for appellant.

Gerard T. Noce, Frans J. von Kaenel, St. Louis, for Fred Weber, Inc.

Colleen C. Jones, Hayes, Newmark & Steigerwald, St. Louis, for A.F.O., Inc.

PUDLOWSKI, Judge.

In his personal injury action, Plaintiff, Robert Meckfessel, appeals from the grant of Summary Judgment to Defendant, Fred Weber, Inc., and the verdict and judgment rendered by a jury against Plaintiff and in favor of the remaining Defendants, A.F.O., Inc., J.M. Marschuetz Construction Company, and the Missouri Highway and Transportation Commission ("MHTC"). We reverse and remand in part and affirm in part.

At the time of Plaintiff's injury, St. Charles Rock Road was under construction. The project involved removing a concrete median and putting in a mutual left hand turn lane. Part of the project involved relocating the roadway drainage system from the center to the outside of the roadway. Fred Weber served as General Contractor on the entire project. Fred Weber subcontracted with A.F.O. to install the storm sewers and with Marschuetz to install sidewalks and curbs along St. Charles Rock Road.

Under the terms of the contracts, the subcontractors would furnish all materials, supplies, labor, equipment and other necessary items to do and perform the subcontracted work. Fred Weber, at no time, supervised or had control over the agents or employees of A.F.O. or Marschuetz in connection with the installation of the storm water drainage system, sidewalks or curbs.

The terms of Fred Weber's subcontracts with A.F.O. and Marschuetz required that all work be done in strict accordance with the plans and specifications of MHTC. These specifications required A.F.O. and Marschuetz to provide for the convenience and safety of the general public and residents along and adjacent to the road in an adequate and satisfactory manner. In addition, the plans and specifications contained a traffic control plan that informed the contractors of what MHTC required as far as traffic control and traffic safety precautions.

Safety precautions for passing automobile traffic included plastic flagging tape, plastic channelizer barrels and safety signs. In order to ensure the safety of pedestrians, all drop inlets or excavations were to be covered with plywood, safety barrels, and to be protected with heavy 16–foot lumber or were to be secured with barricades and safety ribbon.

On Friday afternoon, August 17, 1990, the day before Plaintiff's accident, the MHTC senior construction inspector drove through and inspected the entire construction site and concluded that all of the traffic control and safety devices were adequate.

On August 18, 1990, Plaintiff was on his way to a "cruise night" car show at the Chuck–a–Burger on St. Charles Rock Road in St. Louis County. The car show attracted a large crowd of people to the construction site. Due to the shortage of parking in the area, many Chuck–a–Burger patrons parked their cars in and around the construction site. As a result, safety barrels and other safety devices were moved from their original positions. After parking his car on the north side of St. Charles Rock Road, Plaintiff proceeded west to reach the Chuck–a–Burger. As he crossed a viaduct, Plaintiff encountered a pile of debris which blocked his path. Plaintiff then altered his path and walked between two parked cars. While walking between the cars, Plaintiff fell into an uncovered hole. As a result of his fall, Plaintiff sustained injuries.

Plaintiff brought suit against Fred Weber, A.F.O., Marschuetz and MHTC. Fred Weber filed a separate motion for Summary Judgment which was granted by the trial court. Plaintiff's cause proceeded to trial against the remaining defendants. A jury found in favor of the defendants assessing

one-hundred percent (100%) fault to Plaintiff and zero percent (0%) fault to each of the defendants. Judgment was entered in favor of the defendants. Plaintiff filed a motion for new trial which was not ruled upon within ninety days at which time Plaintiff filed this appeal.

Plaintiff's first point on appeal asserts that the court improperly granted Fred Weber Summary Judgment because: a) there were genuine disputes as to material issues of fact regarding Fred Weber's direct liability; and b) there were genuine disputes as to material issues of fact regarding Fred Weber's vicarious liability for the alleged acts of negligence of its subcontractors.

We first address the issue of Fred Weber's direct liability. In Paragraph numbered 8 of his first amended petition, Plaintiff alleges the following against all of the defendants:

Plaintiff's fall was the direct result of defendant's [sic] negligence in one or more of the following respects:

a) Defendants negligently caused or permitted said hole to remain uncovered and thus, was unreasonably unsafe for pedestrians passing by;

b) Defendants negligently failed and omitted to warn plaintiff of the unreasonably and unsafe condition described above;

c) Defendants negligently failed and omitted to remedy said condition or to otherwise prevent the use of said area by pedestrians;

d) Defendants had actual or constructive knowledge and knew or should have known that the uncovered hole created an unsafe condition for pedestrians, and defendants had sufficient time in which to remedy the unsafe condition but failed to do so;

e) Defendants failed to repair the unsafe condition and failed to warn or guard against a reasonably foreseeable risk of a pedestrian falling in the above mentioned hole.

Fred Weber supported its Motion for Summary Judgment by submitting the affidavit of its senior project manager, Chris Wilmes. In the affidavit, Wilmes stated that: 1) Fred Weber subcontracted all of the work with respect to the installation of storm water drainage systems, sidewalks and curbs; 2) subcontractors, A.F.O. and Marschuetz, were to perform all work in accordance with the MHTC's plans and specifications; and 3) at no time did Fred Weber supervise any agents or employees of A.F.O. and Marschuetz in connection with the installation of the storm water drainage system, sidewalk, or curb.

In response, Plaintiff filed only a Memorandum in Opposition to Defendant Fred Weber's Motion for Summary Judgment. It was not supported by any affidavits nor other factual documentation to support the allegations in his petition.

When considering appeals from summary judgment, we review the record in a light most favorable to the party against whom judgment was entered, according the non-movant the benefit of all reasonable inferences from the record. *Andes v. Albano,* 853 S.W.2d 936, 940 (Mo. banc 1993). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 377 (Mo. banc 1993). It is a well settled rule that once a moving party has established its right to judgment as a matter of law, the non-moving party may not rest upon the allegations contained in the pleadings. *Andes v. Albano,* 853 S.W.2d at 936. The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. Summary judgment tests simply for the existence, not the extent, of these genuine disputes. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d at 378.

In the case at bar, Fred Weber did not establish its right to a judgment as a matter of law. Nothing contained in its Motion for Summary Judgment, the supporting affidavit or its original Answer to the Plaintiff's amended petition directly refutes the Plaintiff's allegations. Specifically, the direct assertions of negligence against Fred Weber that are contained in Paragraph numbered 8 of Plaintiff's first amended petition are not addressed. In his Memorandum in Opposi-

tion to Defendant Fred Weber's Motion for Summary Judgment, Plaintiff stated "[a]n issue of material fact still exists as to the extent of defendant's Fred Weber's involvement in the construction being done on St. Charles Rock Road at the time of the Plaintiff's fall." We agree. The affidavit of Wilmes establishes that Fred Weber did not exercise any control over A.F.O.'s and Marschuetz's employees in connection with the installation of the storm water drainage system, sidewalk, or curb. The extent of Fred Weber's involvement in the project as a whole bears on its direct liability for Plaintiff's injuries. Fred Weber failed to meet its burden of proving a right to judgment as a matter of law.

■ In its appeal brief, Fred Weber asserts that it is not liable for Plaintiff's injuries due to an intervening cause. Rule 74.04 requires that a Motion for Summary Judgment state with particularity each material fact to which movant claims there is no genuine issue. Fred Weber did not mention in its Motion for Summary Judgment nor in its supporting affidavit nor in its original Answer the possible defense of an independent intervening cause. The issue was not presented to the trial court nor was it argued. We determine whether or not summary judgment was properly granted on the basis of evidentiary material before the court at the time summary judgment was rendered. *Sturgeon v. State Bank of Fisk,* 616 S.W.2d 578, 581 (Mo.App.1981). Therefore, we are unable to consider the issue of the alleged independent intervening cause as a possible grounds for affirming the summary judgment granted to Fred Weber.

Fred Weber further asserts that Plaintiff is barred by the Doctrine of Collateral Estoppel from litigating his direct liability claim against Fred Weber.

■ In determining whether or not collateral estoppel should apply, we consider four factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party

to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979).

■ In examining whether or not collateral estoppel applies, we need to look no further than the first prong of the *Oates* test. One of the claims which Plaintiff asserts is the direct negligence and liability of Fred Weber. This issue was not addressed by the trial involving only A.F.O., Marschuetz and Plaintiff. The issue at trial was the direct liability of A.F.O. and Marschuetz for Plaintiff's injuries. Therefore, the Doctrine of Collateral Estoppel does not apply to bar Plaintiff from litigating the direct liability of Fred Weber.

Accordingly, we reverse and remand for further proceedings with respect to the direct liability of Fred Weber for Plaintiff's injuries.

■ We next address the issue of the vicarious liability of Fred Weber for the actions of its subcontractors because of the likelihood that it will be raised at the new trial. We hold that the jury verdict in favor of Marschuetz and A.F.O. is dispositive of the issue. Even if the trial court improperly granted Summary Judgment to Fred Weber on the issue of its vicarious liability, Plaintiff is barred by the Doctrine of Collateral Estoppel from asserting the claim of vicarious liability.

■ Applying the *Oates* test, as set out *supra,* Plaintiff is precluded from raising the issue of Fred Weber's vicarious liability. On a theory of vicarious liability, the subcontractors would have to be found liable for the injuries before any liability could attach to Fred Weber. Under the doctrine of vicarious liability, the liability of the master is derived from and can be no greater than the liability of the servant. *Helm v. Wismar,* 820 S.W.2d 495, 497 (Mo. banc 1991). The jury determined that Plaintiff was one hundred percent (100%) responsible for his injuries and the subcontractors, A.F.O. and Marschuetz, were found to be zero percent (0%)

at fault. We find instructive *Restatement (Second) of Judgments* § 51, cmt. b, illus. 2 (1982) which states:

> P is injured while on a construction site under the general control of C, a general contractor, allegedly as the result of a wrongful act of S, a subcontractor. Under applicable law, C is vicariously responsible for the injuries to persons situated as P is that result from wrongful acts of S. P brings an action against S, who defends on the grounds that his conduct was not wrongful. A judgment for S precludes P from bringing an action against C for his injuries.

In relation to Plaintiff's vicarious liability claim against Fred Weber, the above illustration duplicates what occurred in the case at bar. After Fred Weber was dismissed, the case went to trial against Marschuetz and A.F.O. who defended on the grounds that their conduct was not wrongful. The jury came back with its finding that Plaintiff was 100% at fault and Marschuetz and A.F.O. were 0% at fault. Plaintiff does not dispute that there was a full adversarial trial on the merits of the subcontractors' liability. Plaintiff was a party to that action. Plaintiff received a full and fair opportunity to assert its claims of liability against the subcontractors. Therefore, we hold that Plaintiff is barred by the Doctrine of Collateral Estoppel from attempting to assert a claim of vicarious liability against Fred Weber.

■ Plaintiff's second and final point on appeal alleges that, at trial, the court abused its discretion and committed prejudicial error when it refused to allow Plaintiff to present the testimony of a witness who had fallen into a different hole in a different area of the same construction site on the same evening. The testimony was proffered to show the dangerous condition of the construction site.

Prior to the introduction of evidence at trial, MHTC made an oral Motion in Limine to exclude the testimony of Michelle Kirkpatrick, the woman who had fallen into another hole on the same construction site on the same evening Plaintiff was hurt. Counsel for Plaintiff made an offer of proof that Ms. Kirkpatrick would:

> ... testify that she was on the same evening that Mr. Meckfessel fell into a hole on the construction site that is in question and she fell into a different hole about one hundred to two hundred feet away from there and that at that time the hole that she fell into was uncovered and that there were no warning barrels or anything placed in the immediate vicinity of that hole.

> And we would be offering that testimony to show the dangerous condition of the entire construction site there on the north side of St. Charles Rock Road adjacent to the Chuck–a–Burger and the Clark service station.

> ... as she approached the hole she saw no warning barrels warning of that hole being there and that the hole was completely uncovered and she walked straight into it.

> ... The opening was the same dimensions. Now the depth we're not certain on that. I know as the drainage system goes down I think the holes get somewhat smaller. I think as part of the drainage system.

> ... It is part of the same drainage system. It is on the same stretch of St. Charles Rock Road. You can see one hole from the other. And it's only a matter of a hundred to two hundred feet separating them. And that's an estimate at that. It could be closer; could be a little farther.

The trial court, without elaboration, disallowed the evidence.

The Missouri Supreme Court has stated that:

> the determination of what is evidence of a similar occurrence is often subjective. For that reason, as we have said, a trial court has substantial discretion in ruling on the admissibility of evidence. *Karashin v. Haggard Hauling & Rigging, Inc.,* 653 S.W.2d 203, 205 (Mo. banc 1983). Thus, the admission of evidence is committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *Lawson v. Schumacher & Blum Chevrolet, Inc.,* 687 S.W.2d 947, 951 (Mo.App.1985).

*Pierce v. Platte–Clay Elec. Co-op, Inc.*, 769 S.W.2d 769, 775 (Mo banc 1989).

In *Copeland v. Mr. B's Pool Centers, Inc.*, 850 S.W.2d 380, 381 (Mo.App.E.D.1993), this court stated that:

> Where evidence is excluded, the issue is not whether the evidence was "admissible," it is whether the trial court abused its discretion in excluding it. An "abuse of discretion" standard, by definition, means that, in many instances, the ruling of the trial court would be upheld regardless of whether the evidence had been admitted or excluded. The appellate court simply defers to the trial court in view of its superior opportunity to evaluate the proffered evidence in the context of the trial.

Plaintiff relies on three cases, *Pierce v. Platte–Clay Elec. Co-op, Inc.*, 769 S.W.2d 769; *Doyle v. St. Louis–S.F. Ry. Co.*, 571 S.W.2d 717 (Mo.App.1978); and *Vinyard v. Vinyard Funeral Home, Inc.*, 435 S.W.2d 392 (Mo.App.1968) in support of his position. These cases are not on point because in each of those cases, the evidence in question had been admitted by the trial court. The issue presented in those cases was whether or not the trial court abused its discretion in admitting the evidence. In the case at bar, the trial court excluded the evidence, the standard of review for which was set out *supra* as stated in *Copeland*, 850 S.W.2d at 381.

 Furthermore, these cases confirm the principle that the trial court has broad discretion to admit or exclude evidence of other accidents. An appellate court will not disturb the trial court's ruling absent an abuse of discretion. In each of the cases cited, the decision of the trial court was affirmed because the appeals court found no abuse of discretion. *Pierce*, 769 S.W.2d at 775–776. *Doyle*, 571 S.W.2d at 726; *Vinyard*, 435 S.W.2d at 397.

Moreover, the factual basis for the admission of the evidence in question in each of the cases cited by Plaintiff is absent here. In *Pierce*, 769 S.W.2d 769, a farmer sued an electric utility when his plow hit a guy wire. The trial court allowed the testimony of another farmer who hit the same guy wire while plowing the same field five years earlier. He was also one of the first people on the scene of Pierce's accident and "... was, thereby, in a unique position to compare the conditions at the time of Pierce's accident to the conditions five years earlier." *Id.* at 775. In *Doyle*, 571 S.W.2d 717, the court allowed a witness to testify of his experience at the same railroad crossing one year before the accident in question. This court found that the trial court was satisfied that the conditions at the time of the accident at issue were sufficiently similar to one year prior. The testimony was found relevant to demonstrate the dangerous nature of a crossing overgrown with vegetation. *Id.* at 726. In *Vinyard*, 435 S.W.2d 392, the plaintiff fell on a dimly lit ramp on the defendant's parking lot. The trial court admitted evidence of a fall by another patron at a different ramp on the same parking lot. In finding the ramps to be in substantially similar condition, the court stated that, "[t]he east and west ramps were substantially similar. Each was built and paved with the same material at the same time. Each was treated simultaneously with the same sealing compound. At the time of Plaintiff's and Mrs. Seibert's falls, each was wet." *Id.* at 397.

The proffered testimony of Ms. Kirkpatrick related to conditions at a different spot on the construction site and to a different hole with different dimensions. Plaintiff failed to establish that the circumstances surrounding Ms. Kirkpatrick's fall were substantially similar to the circumstances of his own fall. The only fact established by the offer of proof is that both falls occurred on the same construction site. Plaintiff, in arguing the relevancy of Ms. Kirkpatrick's testimony, states in his brief that "Ms. Kirkpatrick could have testified to the lighting conditions, the fact that the uncovered holes were not open and obvious, and of the effect that the large crowds had on the area." None of these factors were contained in Plaintiff's offer of proof to the trial court. The offer of proof did not contain an offer to testify about the lighting conditions. The offer of proof did not contain an offer to testify regarding whether or not the holes were open and obvious. The offer of proof did not contain an offer to testify as to what effect the large crowds had on the construction site.

It is apparent that the evidence of Ms. Kirkpatrick falling on the same job site on the same evening would have been prejudicial to the Defendants. There was clearly a danger that a jury hearing of the two falls on one site would have been much more likely to find fault on the part of the defendants regardless of whether or not either fall was caused by their negligence.

Furthermore, had Ms. Kirkpatrick been allowed to testify, the defendants would have been forced to present their own witnesses and evidence which bore on the circumstances surrounding Ms. Kirkpatrick's claim. This would have resulted in a miniature trial surrounding Ms. Kirkpatrick's testimony.

Therefore, we hold, based upon the offer of proof, the trial court did not abuse its discretion in disallowing the evidence. Point denied.

We reverse and remand for further proceedings with regard to the direct liability of Fred Weber, Inc. only. In all other aspects, the judgment is affirmed.

SMITH, P.J., and WHITE, J., concur.